[No. 63008-3-I. Division One. December 20, 2010.]

BRUCE JOHNSON, *Appellant*, v. CHEVRON U.S.A., INC., ET AL., *Respondents*.

*John P. Sheridan* (of *The Sheridan Law Firm PS*), for appellant.

*Kirsten G. Daniels, Ryan P. McBride,* and *Randall P. Beighle* (of *Lane Powell PC*), for respondents.

¶1 ELLINGTON, J. — Bruce Johnson worked as a tanker driver delivering fuel for Chevron U.S.A. Inc. He was injured on the job. He sued Chevron and his former supervisor, alleging discrimination on the basis of race and disability. The court summarily dismissed Johnson's claim for failure to accommodate, and a jury returned a defense verdict on his remaining claims. Johnson appeals the sum-

mary dismissal of his accommodation claim and asserts that instructional errors warrant a new trial on his other claims. We agree and reverse.

## BACKGROUND

¶2 In 1996, Bruce Johnson began delivering fuel as a truck driver for Chevron at its Harbor Island facility. Chevron's "Physical Requirements and Working Conditions" report outlines the physical work requirements for truck drivers, including frequently lifting up to 46 pounds and pushing or pulling up to 50 pounds.[1]

¶3 In July 2000, Johnson suffered an on-the-job back injury and took paid medical leave. He returned and worked for more than a year without incident. In March 2002, however, he suffered a second back injury. He underwent surgery in October 2002, followed by seven months of paid medical leave. His physician, Dr. Blair, released him to return to work without restriction in March 2003. When Johnson's back flared up in the summer of 2003, Dr. Blair allowed him to return to work after a few days off, provided that his truck was equipped with air-ride seats, which it was.

¶4 In August 2003, Johnson's supervisor, Greg Miller, told his manager Jerry Holmes that Johnson "may not be in [a] condition to work without further injuring himself."[2] Miller later told Johnson's nurse case manager that Holmes did not want Johnson driving anymore because Johnson "appeared to be at risk of re-injury and was not performing what was expected of him."[3] In September 2003, Miller observed Johnson limping and complaining about his sore back. Miller placed Johnson on light duty and required another physical capacities evaluation (PCE). Miller and Holmes considered terminating Johnson. The October PCE, however, confirmed that Johnson could work without restriction.

---

[1] Ex. 463.

[2] Clerk's Papers (CP) at 868.

[3] CP at 872.

¶5 Around the same time, Johnson, who is African-American, made an internal complaint asserting numerous instances of unfair treatment. Chevron's human resources department found no merit to his complaint.

¶6 In late 2003, Johnson was introduced to a handmade tool used by ConocoPhillips drivers for lifting hoses during pumping. Johnson thought the tool alleviated some of his back pain. In early 2004, he developed a modified version of the tool. Soon thereafter, however, he was advised by Miller that he could not use the tool unless it was certified by Chevron.

¶7 Johnson asked Dr. Blair for a letter endorsing his use of the lifting tool as a reasonable accommodation. Dr. Blair wrote a prescription stating, "Mr. Johnson would benefit from use of ergonomic tool for his job to help him lift and carry."[4] On May 22, 2004, while he was not allowed to use the tool, Johnson again injured his back while draining a fuel hose. He was on medical leave for six months.

¶8 In June 2004, Chevron conducted an assessment and concluded the tool posed a greater risk to drivers than existing practices: "[T]here is a greater chance of a healthy individual being injured while using the [tool,] as opposed to the current method."[5] Chevron announced that none of its drivers, including Johnson, could use the tool at work. Chevron apparently made no effort to determine whether the tool was appropriate as an accommodation for Johnson.

¶9 Johnson filed a disability discrimination charge, stating he was denied reasonable accommodation in the form of the hose drainer, which "would enable him to perform the essential functions of his job."[6]

¶10 On October 27, 2004, Dr. Blair released Johnson to return to work, checking a box on the release form stating

---

[4] CP at 205.

[5] CP at 218.

[6] CP at 879.

that Johnson "can perform this job with 'reasonable accommodations' as noted in comments section below."[7] In the comments section, Dr. Blair wrote that Johnson "[g]enerally can perform job on a daily basis *without* any accommodation. He will occasionally benefit from use of 'handmade tool' to assist with job."[8]

¶11 After receiving Dr. Blair's release, Miller e-mailed Chevron's workers' compensation representative Kelly George and asked, "Couldn't we allow him to use the tool as prescribed by his doctor and make him sign a statement that he will not allow others employed by ChevronTexaco to use the tool[?]"[9] But because of its conclusion that the tool was unnecessary and "potentially unsafe,"[10] Chevron deemed the tool an unreasonable accommodation. George told Miller she "would not allow [Johnson] back to work until it is clarified with the doctor . . . that this 'handmade tool' cannot be used at work."[11] Dr. Blair was asked to complete a form by checking one of two boxes as follows:

1. ___ *Yes*, this individual should be able to return to his regular work activities . . . *without* any accommodation including the use of the handmade tool. (This will return the worker to work.)

2. ___ *Yes*, this individual should be able to return to his regular work activities . . . but *with* occasional accommodation using the handmade tool. (ChevronTexaco *will not* allow the worker to return to work with this option.)[12]

Dr. Blair checked the first box. He later explained in his deposition that Johnson felt he could return to work with or without the tool, although "he felt it made his job easier."[13]

---

[7] CP at 885.

[8] CP at 885.

[9] CP at 894.

[10] CP at 890.

[11] CP at 887.

[12] CP at 1074.

[13] CP at 1084.

¶12 Johnson returned to work on November 25, 2004. On December 7, 2004, Miller told Christopher Rice of Chevron's human resources department that Johnson had slipped a note under his door stating that he was "scared to really explain daily pain level in back and legs"[14] for fear of being pulled off the job. Rice replied that Miller should tell Johnson he did not need to report his daily pain level and should just inform them if he is unable to perform his job or is injured on the job.

¶13 On April 20, 2005, Johnson sustained another back injury at work. On May 24, 2005, following a PCE, Johnson was restricted to sedentary to light-medium work. He was placed on light duty in mid-June, and in August 2005, he was placed on long term disability.

¶14 In February 2006, another PCE was performed. Referring to Chevron's Physical Requirements and Working Conditions report describing the physical requirements for truck drivers, the evaluator determined that Johnson could not return to work as a tanker truck driver. In March 2006, Johnson was given an independent medical examination by an orthopedic surgeon and neurologist, who determined he should be permanently restricted to sedentary to light-medium work.

¶15 On March 14, 2006, Rice sent an e-mail to a Chevron human resources distribution list requesting a review of Johnson for job opportunities within the company, noting that Johnson was limited to sedentary to light-medium work. Rice did not receive a positive response. On April 27, 2006, Chevron's workers' compensation administrator informed Chevron's payroll department that Johnson was no longer eligible for workers' compensation because he was employable, although not for his job of injury. Johnson sought a position as a clerk, but the job had been cut to part-time. In November 2006, his application for disability benefits was approved and Johnson left Chevron.

---

[14] CP at 899.

¶16 From 2007 to 2009, Johnson was employed as a tanker product delivery driver, first for Praxair and then for Associated Petroleum Products. Both employers allowed Johnson to use the ergonomic hand tool. Johnson experienced no further injuries.

¶17 In June 2007, Johnson brought claims under the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW, for intentional race and disability discrimination, failure to accommodate, hostile work environment, and retaliation. He also brought a claim against Miller individually for aiding, abetting, encouraging, or inciting the commission of an unfair discriminatory practice. The court appointed a special master to address pretrial discovery issues.

¶18 Shortly before trial, Chevron filed two motions for partial summary judgment regarding the failure to accommodate claim. The first motion argued that Chevron satisfied its duty to accommodate Johnson as a matter of law by giving him time off as ordered by his doctors from June 2000 through April 19, 2005. The second motion argued that Johnson's final back injury on April 20, 2005 rendered him physically unable to perform the essential functions of the job. On November 13, 2008, the trial court granted both motions and dismissed Johnson's accommodation claims.

¶19 His remaining claims went to trial. The jury returned a verdict in favor of Chevron and Miller. Based upon Chevron's cost bill, the court awarded Chevron more than $25,000 in costs, including disbursements for deposition expenses. Johnson argued that deposition costs are not disbursements under RCW 4.84.090. Chevron agreed and submitted a reduced cost bill. Ultimately the court awarded costs of $6,450 but denied Johnson's motion for CR 11 sanctions. Johnson appeals.

## DISCUSSION

### *Partial Summary Judgment*

¶20 Johnson argues the trial court erred in dismissing his reasonable accommodation claim. We apply the usual standard of review on summary judgment.[15] In discrimination cases, summary judgment is often inappropriate because the WLAD "mandates liberal construction"[16] and the evidence "will generally contain reasonable but competing inferences of both discrimination and nondiscrimination that must be resolved by a jury."[17] Courts will, however, grant summary judgment when the plaintiff fails to raise a genuine issue of fact on one or more prima facie elements.[18]

¶21 It is an unfair practice for an employer to refuse to hire, to discharge, or to discriminate based on a person's sensory, mental, or physical disability.[19] The statute gives rise to a cause of action for at least two different claims: for failure to accommodate, when the employer fails to take steps " 'reasonably necessary to accommodate an employee's condition,' " and for disparate treatment, when the employer

---

[15] Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005); CR 56(c). All facts and reasonable inferences are considered in the light most favorable to the nonmoving party, and summary judgment is appropriate only if, from all the evidence, reasonable persons could reach but one conclusion. *Vallandigham*, 154 Wn.2d at 26.

[16] *Martini v. Boeing Co.*, 137 Wn.2d 357, 364, 971 P.2d 45 (1999); RCW 49.60.020.

[17] *Davis v. W. One Auto. Grp.*, 140 Wn. App. 449, 456, 166 P.3d 807 (2007).

[18] *See, e.g., Hines v. Todd Pac. Shipyards Corp.*, 127 Wn. App. 356, 112 P.3d 522 (2005).

[19] RCW 49.60.180.

discriminates against an employee because of the employee's condition.[20] Johnson proceeded under both theories.

¶22 In 2007, the legislature amended the WLAD to adopt a definition of "disability" and specify when an employee is eligible for accommodation for a disability. Under RCW 49.60.040(7)(a), a "disability" is "the presence of a sensory, mental, or physical impairment that: (i) Is medically cognizable or diagnosable; or (ii) Exists as a record or history; or (iii) Is perceived to exist whether or not it exists in fact." An employee qualifies for reasonable accommodation if he or she has an impairment that substantially limits his or her ability to perform the job, *or* the employer has notice of the impairment and medical documentation establishes "a reasonable likelihood that engaging in job functions without an accommodation would aggravate the impairment to the extent that it would create a substantially limiting effect."[21] The amendment is retroactive and applies to all causes of action occurring before July 6, 2006 and on or after July 22, 2007.[22] Johnson's claims accrued before July 6, 2006. The amendments thus apply to his claims.

¶23 "[F]ailure to reasonably accommodate the sensory, mental, or physical limitations of a disabled employee constitutes discrimination unless the employer can demonstrate that such accommodation would result in an undue hardship to the employer's business."[23] Chevron does not argue undue hardship. Rather, Chevron contends the undisputed facts show that from the time he returned to work in March 2003 until his final injury in April 2005, Johnson had no "substantially limiting" disability and thus no con-

---

[20] *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 145, 94 P.3d 930 (2004) (quoting *Jane Doe v. Boeing Co.*, 121 Wn.2d 8, 17, 846 P.2d 531 (1993)).

[21] RCW 49.60.040(7)(d).

[22] LAWS OF 2007, ch. 317, § 3. The interim period constitutes the time between the Supreme Court's adoption of a definition in *McClarty v Totem Electric*, 157 Wn.2d 214, 137 P.3d 844 (2006), and the effective date of the amendment. *Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 502, 198 P.3d 1021 (2009).

[23] *Pulcino v. Fed. Express Corp.*, 141 Wn.2d 629, 639, 9 P.3d 787 (2000).

dition for which an accommodation was "medically necessary."[24] Chevron notes that each time Dr. Blair released Johnson to return to work, he did so without any restrictions except for air-ride seats, which were provided. Chevron thus contends that it properly responded to each period of temporary disability by giving Johnson paid leave or placing him on light duty until his pain no longer substantially limited his ability to do the job, and that further accommodations, including the tool, were not medically necessary after he was released back to work without restrictions.

¶24 Chevron's view is that an accommodation is required only when the employee has a disability that substantially limits job performance and the accommodation is medically necessary to enable the employee to perform the job. Chevron emphasizes Dr. Blair's deposition testimony that in his professional opinion, as of that time, Johnson was "not necessarily"[25] substantially limited in his ability to perform the job; that the tool was not "medically necessary"[26] for Johnson to perform his duties; and that when he released Johnson to return to work without conditions, there was nothing that limited his ability to do his work. Chevron also points out that between injuries, and when he wrote the prescription for use of the tool, Dr. Blair was not treating Johnson for any substantially limiting condition.

¶25 But this argument derives from definitions adopted in cases decided before the legislature amended the statute in 2007.[27] The common law definitions have been superseded. "Medical necessity" is no longer the sole basis for a right to accommodation. Under the new statute, either the impairment must be the source of a substantial limitation

---

[24] Br. of Resp't at 14.

[25] CP at 1327-28.

[26] CP at 1327.

[27] *See Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 194, 23 P.3d 440 (2001); *Pulcino*, 141 Wn.2d at 643; *Riehl*, 152 Wn.2d at 145; *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 532, 70 P.3d 126 (2003).

*or* there must be medical documentation indicating a reasonable likelihood that engaging in the job duties without accommodation "would aggravate the impairment to the extent that it would create a substantially limiting effect":

(a) "Disability" means the presence of a sensory, mental, or physical impairment that:

(i) Is medically cognizable or diagnosable; or

(ii) Exists as a record or history; or

(iii) Is perceived to exist whether or not it exists in fact.

. . . .

(d) *Only for the purposes of qualifying for reasonable accommodation in employment,* an impairment must be known or shown through an interactive process to exist in fact and:

(i) The impairment must have a substantially limiting effect upon the individual's ability to perform his or her job, the individual's ability to apply or be considered for a job, or the individual's access to equal benefits, privileges, or terms or conditions of employment; *or*

(ii) The employee must have put the employer on notice of the existence of an impairment, and medical documentation must establish a reasonable likelihood that engaging in job functions without an accommodation would aggravate the impairment to the extent that it would create a substantially limiting effect.[28]

¶26 Under the new statute, the question is not whether the accommodation was "medically necessary" in order for Johnson to do his job, such as hearing enhancements or a wheelchair might be. Instead, it is whether Johnson's impairment had a substantially limiting effect upon his ability to perform the job such that the accommodation was reasonably necessary, *or* doing the job without accommodation was likely to aggravate the impairment such that it became substantially limiting. Johnson contends Chevron should have allowed him to use the hose lifting tool as recommended by Dr. Blair to avoid further injuring his

---

[28] RCW 49.60.040(7) (emphasis added).

back. Among other things, he points to Dr. Blair's May 2004 "prescription" stating that Johnson would benefit from using the tool and his October 2004 letter stating that Johnson "will occasionally benefit from use of a 'handmade tool' to assist with job."[29] Chevron responds that Dr. Blair continually released Johnson to work after each successive injury without limitation and points to Dr. Blair's deposition testimony that as of June 2004, Johnson did not blame his injuries on Chevron's refusal to let him use the tool.

¶27 Whether an employer has made a reasonable accommodation is generally a question of fact for the jury.[30] So it is here. Johnson's supervisor worried that he would reinjure himself if he returned to work. His doctor recommended that he be permitted use of the tool. Although his doctor released him to work without that condition, he did so after learning Chevron would not permit use of the tool. Further, Chevron's evaluation of the tool did not address Johnson's situation—rather it addressed only use of the tool by healthy drivers.

¶28 The evidence was sufficient for a jury to find either that Johnson's impairment had a substantially limiting effect on his ability to perform his job, or that the evidence, including medical documentation, established a reasonable likelihood that engaging in job functions without accommodation would aggravate the impairment to the extent that it would become substantially limiting. Whether Chevron properly denied Johnson the use of the hose lifting tool as an accommodation or should have taken steps to provide him with an alternative are questions of fact. Summary judgment was improper.

¶29 Chevron contends that the court properly dismissed Johnson's accommodation claim at least for the period following his final back injury on April 20, 2005 because he could no longer frequently lift 46 pounds and so was no

[29] CP at 885.

[30] *Pulcino*, 141 Wn.2d at 644.

longer qualified to perform the essential functions of a truck driver.

¶30 This too is a question of fact. First, it ignores the possibility that with appropriate accommodation, Johnson could have performed the job. Dr. Amin submitted a report to the Department of Labor and Industries on February 13, 2006 stating Johnson could work as a driver with reasonable accommodation. Further, Johnson denies that Chevron's drivers were in fact frequently required to lift up to 46 pounds.

¶31 Similarly, whether Chevron properly accommodated Johnson by trying to locate other jobs after his final injury is an issue too intertwined with the others to be parsed separately.

¶32 We reverse the orders granting partial summary judgment on the accommodation claims and remand for trial.

*Trial Claims—Jury Instructions*

¶33 Johnson argues the trial court committed reversible error by including a comparative element in instructions 11 and 12, the instructions on disability and race discrimination respectively.[31] The instructions required Johnson to prove that he was "treated differently" than drivers who were not disabled and not African-American, in addition to proving

---

[31] Instruction 11 stated, in part, "To establish his claim of discrimination on the basis of disability, Mr. Johnson bears the burden of proving each of the following propositions: 1. That he has a disability; and 2. That he is able to perform the essential functions of the job in question; and 3. That his disability was a substantial factor in an adverse employment action against Johnson, committed by Chevron; and 4. That Mr. Johnson was treated differently than non-disabled employees in the workplace." CP at 3196. Jury Instruction 12 stated, in part, "To establish his 'disparate treatment claim' against Chevron based on his race, Mr. Johnson has the burden of proving the following propositions by a preponderance of the evidence: 1. That Chevron denied him use of an ergonomic hose draining tool, required its approved use, assigned him less favorable routes, failed to hire him in a clerk position in 2005 and/or into another position in 2006, OR failed to provide him with additional light duty in 2005; and 2. That he was treated differently than other Harbor Island facility drivers who are not African-American; and 3. That Johnson's race was a substantial factor in any of Chevron's decisions as set forth above." CP at 3197.

that disability and race were a "substantial factor" in Chevron's employment decisions. He points out that the pattern instruction does not include the comparator element.[32]

¶34 We review claimed errors in jury instructions de novo.[33] " 'Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law.' "[34] An erroneous instruction is presumed prejudicial unless it affirmatively appears that it was harmless.[35]

¶35 The instructions were error. Johnson was required to prove only that his race or disability was a substantial factor in Chevron's decisions. Proof of different treatment by way of comparator evidence is relevant and admissible but not required, and in many cases is not obtainable. Disability cases in particular often involve situations where, because of the unique nature of the disability, there is no relevant comparison evidence. Indeed, requiring a disability plaintiff to prove he was treated differently from nondisabled employees contradicts the employer's affirmative obligation to treat that employee differently by offering accommodation. The trial court ruled the comparator element was necessary because "anybody could make a claim that they were treated unfairly under the law, and in

---

[32] The pattern instruction states, "Discrimination in employment on the basis of [age] [creed] [disability] [marital status] [national origin] [race] [religion] [sex] is prohibited. To establish [his] [her] 'disparate treatment claim', _(name of plaintiff)_ has the burden of proving the following propositions: (1) That _(name of defendant)_ [terminated] [did not promote] [did not hire] [laid off] _(name of plaintiff)_ ; and (2) That _(name of plaintiff's)_ [age] [creed] [disability] [marital status] [national origin] [race] [religion] [sex] was a substantial factor in _(name of defendant's)_ decision [to terminate] [not to promote] [not to hire] [to lay off]." 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 330.01, at 307 (5th ed. 2005) (alterations in original).

[33] *Hue v. Farmboy Spray Co.*, 127 Wn.2d 67, 92, 896 P.2d 682 (1995).

[34] *Keller v. City of Spokane*, 146 Wn.2d 237, 249-50, 44 P.3d 845 (2002) (quoting *Bodin v. City of Stanwood*, 130 Wn.2d 726, 732, 927 P.2d 240 (1996)).

[35] *Blaney v. Int'l Ass'n of Machinists & Aerospace Workers*, 151 Wn.2d 203, 211, 87 P.3d 757 (2004).

order to make that comparison, there has to be some evidence that others were treated differently in comparison."[36] This is not the law, and the error was not harmless.

¶36 We reverse and remand for trial on all issues.

¶37 We do not address Johnson's claims of error in admission of evidence at trial because on remand, those issues may not arise. Similarly, we do not address discovery issues or sanctions, except to note that the court did not abuse its discretion in denying sanctions. Nor do we address the propriety of the cost award, as it is vacated by reason of our reversal.

▮▮▮ ¶38 On the subject of Chevron's error in requesting costs for deposition expenses, the court did not abuse its discretion in declining to impose CR 11 sanctions. Chevron submitted a declaration from the attorney responsible for preparing the cost bill, in which she described the research process in which she engaged, explained why she had concluded that RCW 4.84.090 supported reimbursement for deposition costs, and admitted that her analysis was incorrect. Because Chevron's lawyer conducted a reasonable inquiry and there is no evidence of improper purpose, the trial court did not abuse its discretion in declining to award CR 11 sanctions. "A trial court may not impose CR 11 sanctions for a baseless filing 'unless it also finds that the attorney who signed and filed the [pleading, motion or legal memorandum] failed to conduct a reasonable inquiry into the factual and legal basis of the claims.' "[37]

### Motion To Strike Portions of Reply Brief

¶39 Johnson attached two appendices to his 25-page reply brief. Appendix 1 is a 5-page chart with two columns showing disputed issues of fact regarding Johnson's accommodation claim and citations to the record.

---

[36] Report of Proceedings (Jan. 14, 2009) at 7.

[37] *MacDonald v. Korum Ford*, 80 Wn. App. 877, 884, 912 P.2d 1052 (1996) (emphasis omitted) (alteration in original) (quoting *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 220, 829 P.2d 1099 (1992)).

Appendix 2 is a 1-page chart relating to the trial court's decision to admit certain statements of his former employers, plus pages copied from the record.

¶40 Chevron moved to strike the tables, arguing that they contain substantive argument and therefore violate the RAP 10.3(a)(6) and (c) requirements that argument and citations to the record appear in the body of the briefs, as well as the 25-page limit required by RAP 10.4(b). Johnson asks the court to accept the reply brief as is pursuant to RAP 10.7 or, alternatively, to grant permission to file an overlength brief under RAP 10.4(b). A commissioner of this court passed the motion to strike to the hearing on the merits.

¶41 The appendices are arguably improper. However, the information and arguments are not new; they are merely abbreviated and organized in an effort to make it easier for the court to understand them. The tables are typical of summary materials distributed to the court at the beginning of oral argument. We deny the motion to strike.

¶42 In sum, we reverse and remand for a new trial on both claims.

BECKER and SCHINDLER, JJ., concur.

Review denied at 171 Wn.2d 1020 (2011).