## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| TONI GAMBLE, | ) | No. 76876-0-I |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| CITY OF SEATTLE, a municipal | ) | PUBLISHED OPINION |
| corporation, | ) | |
| | ) | |
| Respondent. | ) | FILED: December 24, 2018 |
| | ) | |

MANN, A.C.J. — Toni Gamble sued Seattle City Light (City Light) alleging that it failed to reasonably accommodate her disability in violation of the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW. The trial court granted summary judgment in favor of City Light after concluding that Gamble failed to establish a prima facie case for a failure to reasonably accommodate. We affirm the trial court.

I.

Gamble began working for the City of Seattle (City) as a laborer in 1987. In 1989, Gamble suffered a work related back injury. By 1996, the injury had worsened to where Gamble could no longer work as a laborer. Gamble transferred to a position as an Electrical Service Representative (representative) with City Light, a public utility and

department of the City. As a representative, Gamble provided customer service support to City Light's customers while working out of City Light's South Service Center in the SODO/Georgetown area.

To accommodate her back injury, Gamble's then manager, Bryan Leuschen, provided her with a standing desk, rubber floor mat, and padded seat cushions for her work vehicle. Leuschen also allowed Gamble to work a "four ten" schedule,[1] which allowed her to have every Wednesday off, and allowed her to work a part time flex schedule after she underwent an unrelated surgery.[2]

In 2012, Leuschen retired and Jon Trout became Gamble's permanent supervisor. From August through December 2012, Trout occasionally asked Gamble to work out of the City Light's North Service Center. Then, in December 2012, Trout asked Gamble to assist an overburdened senior representative by covering Seattle's Queen Anne and Magnolia neighborhoods, out of the North Center.

On February 26, 2013, Gamble was almost in a motor vehicle collision while driving a City Light vehicle. The event caused her to hurt her shoulder and aggravate her back. As a result, Gamble went on medical leave from February 27, 2013 through July 1, 2013.

In 2015, Gamble sued City Light alleging, among other things, that it had failed to reasonably accommodate her disability in violation of the WLAD. Gamble alleged that City Light failed to accommodate her by removing her standing work station, and by

---

[1] A four ten schedule allows an employee to work four days per week with ten hour shifts each day.

[2] While this schedule benefitted Gamble's medical condition it is not clear if it was officially offered to her as an accommodation because everyone who worked for Gamble's unit was allowed to work four tens.

failing to provide her with a rubber mat at the North Center. Gamble also alleged that meetings and work duties were scheduled at times and places that required her to drive more than was necessary. Further, Gamble alleged that after her 2013 medical leave City Light failed to allow her to work a four ten schedule, prevented her from returning to work on a part time flex schedule, and refused to let her work from home. Finally, Gamble alleged that City Light refused to let her switch her day off on one particular incident so that she could attend a doctor's appointment.

Before trial, Gamble moved for summary judgment on her failure to accommodate claim. The City responded with a cross motion for summary judgment. The trial court denied Gamble's motion and granted the City's motion. Gamble's other claims then went to a jury, who returned a verdict in favor of the City on all counts. Gamble appeals the trial court's grant of the City's motion for summary judgment, denial of her motion for summary judgment, and denial of her motion for reconsideration.

II.

We review decisions on summary judgment de novo. Michak v. Transnation Title Ins. Co., 148 Wn.2d 788, 794, 64 P.3d 22 (2003). When reviewing a summary judgment decision, we "engage[] in the same inquiry as the trial court." Hines v. Todd Pacific Shipyards Corp., 127 Wn. App. 356, 366, 112 P.3d 522 (2005). Summary judgment is appropriate if, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Hines, 127 Wn. App. at 366.

Claims arising under the WLAD are typically inappropriate for resolution at summary judgment "because the WLAD 'mandates liberal construction' and the evidence will generally contain reasonable but competing inferences of both discrimination and nondiscrimination that must be resolved by a jury." Johnson v. Chevron U.S.A., Inc., 159 Wn. App. 18, 27, 244 P.3d 438 (2010) (citing RCW 49.60.020). We will nevertheless "grant summary judgment when the plaintiff fails to raise a genuine issue of fact on one or more prima facie elements." Johnson, 159 Wn. App. at 27.

The WLAD prohibits an employer from discriminating against any person because of "the presence of any sensory, mental, or physical disability[,]" RCW 49.60.180(3), and provides a cause of action "when the employer fails to take steps reasonably necessary to accommodate an employee's" disability. Johnson, 159 Wn. App. at 27. The WLAD defines disability as "the presence of a sensory, mental, or physical impairment that: (i) is medically cognizable . . . or (ii) exists as a record or history; or (iii) is perceived to exist." RCW 49.60.040(7)(a).

To set out a prima facie case for a failure to reasonably accommodate a disability, the plaintiff must show that (1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job, and either (a) the impairment had a substantially limiting effect on the individual's ability to perform the job, the individual's ability to apply or be considered for a job, or the individual's access to equal benefits, privileges, or terms or conditions of employment or (b) the employee put the employer on notice of the impairment's existence and medical documentation established a reasonable likelihood that engaging in the job functions

without an accommodation would create a substantially limiting effect; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality. See Davis v. Microsoft Corp., 149 Wn.2d 521, 532, 70 P.3d 126 (2003); Johnson, 159 Wn. App. at 28; RCW 49.60.040(7)(d).

Employers have an obligation to accommodate an employee's disability unless it "would impose an undue hardship on the conduct of the employer's business." Doe v. Boeing Co., 121 Wn.2d 8, 18, 846 P.2d 531 (1993). This duty "is limited to those steps reasonably necessary to enable the employee to perform his or her job." Doe, 121 Wn.2d at 18. And this duty "does not arise until the employer is aware of the . . . disability and physical limitations." Goodman v. Boeing Co., 127 Wn.2d 401, 408, 899 P.2d 1265 (1995). The onus is on the employee to "giv[e] the employer notice of the disability." Goodman, 127 Wn.2d at 408 (internal citations removed). The employee also "retains a duty to cooperate with the employer's efforts. . . . [The WLAD] thus envisions an exchange between employer and employee where each seeks and shares information to achieve the best" possible results. Goodman, 127 Wn.2d at 408-09 (internal citations removed).

III.

Gamble has a qualifying disability under the WLAD. Gamble's back injury required her to change jobs in 1996 and required City Light to provide her with

accommodations. Therefore, her back injury was a physical impairment that was both medically cognizable and existed as a record or history. RCW 49.60.040(7)(a)(i)-(ii).

But to establish a prima facie case for a failure to accommodate, Gamble has to show more than just a qualifying disability. She also has to show that her disability substantially limited her ability to perform her job,[3] that she notified City Light of her need for accommodations, and that upon notice City Light failed to affirmatively adopt reasonable accommodations. RCW 49.60.040(7)(d); Davis, 149 Wn.2d at 532; Johnson, 159 Wn. App. at 28. It is the latter two of these requirements that are lacking. Even if we assume that Gamble's back injury had a substantially limiting effect, for each of City Light's alleged failures, Gamble either failed to notify City Light of her need for updated accommodations, or City Light reasonably accommodated her needs.

## A.

City Light appropriately accommodated Gamble's request for a standing work station. When Gamble was temporarily transferred to the North Center she told Trout that she required a standing work station. While Trout did not respond to her request with the speed that Gamble desired, she contacted the facilities department herself and City Light provided her a standing work station.[4]

City Light also appropriately accommodated Gamble's request for a part-time schedule after returning from medical leave. On Monday June 24, 2013, Gamble contacted City Light and asked if she could return to work part time that Tuesday, June

---

[3] Or alternatively, that medical documentation established a reasonable likelihood that engaging in her job without an accommodation would create a substantially limiting effect. RCW 49.60.040(7)(d)(ii).

[4] We decline to address whether the month delay in Gamble receiving the standing work station, in and of itself, amounted to a WLAD violation because the parties did not brief this issue. Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) (We "will not consider an inadequately briefed argument.")

25, and Thursday, June 27, and then full time the following week. Trout replied that he did not have any work for her the next day, but that he would "work[] with the team . . . to create a modified work schedule for [Gamble] that will meet [her] physical restrictions."

While Gamble alleges that this was a failure to reasonably accommodate her disability, the WLAD "does not require an employer to offer the employee the precise accommodation he or she requests." Doe, 121 Wn.2d at 20. It was unreasonable for Gamble to contact City Light after being on medical leave for months and expect to be accommodated the next day. Trout did not deny her request for accommodation but instead informed her that he would be able to accommodate her request the next week. Gamble chose to return to work full time the following week, and was able to do so without incident. This was not a failure to accommodate.

B.

For the majority of Gamble's allegations, she failed to properly put City Light on notice of her need for accommodations. Gamble argues that because City Light and Leuschen were on notice of her disability since 1996, that this notice was imputed to Trout in 2012. See Kimbro v. Atl. Richfield Co., 998 F.2d 869, 876 (9th Cir. 1989) (finding the employer to be on constructive notice of the employee's disability when the employee's manager had actual knowledge of the disability). We agree. But here the relevant issue is not whether City Light was on notice of Gamble's disability but rather whether City Light was on notice that her previous accommodations were no longer reasonably accommodating her disability. City Light's knowledge of Gamble's disability

does not relieve Gamble of her duty to inform City Light that her accommodations were lacking.

> An employer must be able to ascertain whether its efforts at accommodation have been effective in order to determine whether more is required to discharge its duty. The employee therefore has a duty to communicate to the employer whether the accommodation was effective. This duty flows from the mutual obligations of the interactive process. To hold otherwise would be inequitable to the employer and would undercut the statute's goal of keeping the employee with the impairment on the job.

Frisino v. Seattle School Dist. No. 1, 160 Wn. App. 765, 783, 249 P.3d 1044 (2011) (internal citation omitted) (citing Goodman, 127 Wn.2d at 408-09). The WLAD envisions an exchange between the employer and the employee to ensure that the employee's needs are properly addressed. See Goodman, 127 Wn.2d at 408 ("Reasonable accommodation [is] an exchange between employer and employee").

At oral argument, Gamble's counsel asserted that the exchange between employer and employee is only necessary before an individual is determined to have a qualifying disability. RCW 49.06.040(7)(d) provides "[o]nly for the purposes of qualifying for reasonable accommodation in employment, an impairment must be known or shown through an interactive process." But just because an interactive process is required when determining whether a qualifying disability exists, does not mean that an interactive process is not also required for determining the reasonableness of accommodations. Gamble offers no support for the proposition that an employee never has to go back to the employer with their ongoing concerns, and our decision in Frisino counsels otherwise. See 160 Wn. App. at 779 ("[T]he best way for the employer and employee to determine a reasonable accommodation [(not a qualifying disability)] is through a flexible, interactive process." (emphasis added)).

Here, Gamble failed to inform City Light that she required a rubber mat at the North Service Center. In fact, she testified that she never asked anyone for a rubber mat because "a little floor mat was not worth bothering anyone about." Gamble also never discussed with Trout how her work schedule was affecting her back. To the contrary, she testified that on the days that she was at work she was never forced to miss a work requirement because of her back.

Similarly, Gamble never asked for permission to work from home as an accommodation. Gamble testified at her deposition that she asked Trout permission to work from home in order to have "more quiet time and private time to do" her work.[5] And Leuschen only allowed Gamble to work from home occasionally. He explained, "We did a little experiment . . . I didn't approve a full 8 hours of work at home; she was able to be productive for 2-4 hours [and] had to come in for supervision." The trial court noted: "She was never told she could work at home. She was told she could work on occasion. . . but her job is a face-to-face job." Therefore, Gamble did not put City Light on notice that she needed to work from home as an accommodation for her disability.

Gamble alleged that City Light failed to allow her to adjust her schedule for a doctor's appointment. Gamble asked Trout if she could switch her day off from Wednesday, October 3 to Friday, October 5, but did not specify this was because of a doctor's appointment. Trout asked Gamble to keep her regular day off because a training had previously been scheduled for October 5 that Gamble, as the training supervisor, was supposed to lead. One of Gamble's duties as a supervising representative includes "planning and directing employee training." Gamble agreed to

_____

[5] Gamble also asked Trout for permission to work from home once because her mule was sick.

-9-

keep her scheduled day off, but then took a sick day on October 5 anyway. Gamble never notified City Light that she required the schedule change to accommodate her disability or because she had a doctor's appointment that day, and she took October 5th off in any event.

C.

Gamble's allegation that City Light failed to reasonably accommodate her by preventing her from working a four ten schedule requires a separate analysis. Before Gamble left on medical leave, Gamble was allowed to work a four ten schedule. When viewed in the light most favorable to Gamble, this schedule was offered to her as an accommodation. While Gamble was on leave, City Light changed its policy and no longer allowed anyone to work four tens. Gamble's four ten schedule was the only accommodation that was at least arguably removed. However, neither Gamble nor City Light discussed the sufficiency of the new schedule or whether it reasonably accommodated Gamble. Therefore, the question becomes whose duty it was to discuss the sufficiency of Gamble's new schedule with the other.

In Frisino, this court analyzed whether a school district's trial and error process of finding appropriate accommodation was reasonable. 160 Wn. App. at 779. The court noted that the employee had the burden to communicate with the employer because "determining whether the accommodation[s] w[ere] effective turned on information in [the employee's] control." Frisino, 160 Wn. App. at 783.

Here, upon returning from leave, Gamble requested to work the new schedule which allowed for one day off every two weeks: "I understand that we are no longer working 4/10's so I would like the [new] schedule with alternating Wednesdays off." City

Light granted her request. Therefore, as far as City Light knew, Gamble's new schedule was precisely the accommodation that she desired. Had this schedule been insufficient that was information solely in Gamble's control.

In Conneen v. MBNA America Bank, N.A., the Third Circuit analyzed a similar situation under the Americans with Disabilities Act (ADA). 334 F.3d 319 (3rd Cir. 2003). There, Conneen suffered from a disability that made it difficult for her to arrive at work on time, and MBNA accommodated her by allowing her to work an adjusted schedule. MBNA later came under the impression that Conneen no longer required her accommodation. Upon the removal of her accommodation, Conneen did not inform MBNA that her disability remained or that she still require the adjusted schedule. See Conneen, 334 F.3d at 321-24. In affirming the trial court's grant of summary judgment in favor of MBNA, the Third Circuit noted that "neither the law nor common sense can demand clairvoyance of an employer." Conneen, 334 F.3d at 331.

Conneen is similar to Gamble's situation. In Conneen, the employee was previously accommodated but when her accommodations were removed she failed to inform her employer of an issue. Conneen, 334 F.3d at 321. Similarly, here, Gamble's four ten accommodation was removed but Gamble never told City Light that this was an issue. In Conneen, MBNA "had every reason to believe that the [disability] no longer existed . . . and [Conneen] did nothing to inform [MBNA] that it did." Conneen, 334 F.3d at 331. Further, "once [MBNA] threatened to withdraw the accommodation, [Conneen] remained silent. [She] never contacted [her doctor], and never notified [MBNA] of her condition." Conneen, 334 F.3d at 333. Similarly here, City Light had every reason to

believe that the new schedule was reasonably accommodating Gamble and she did not put City Light on notice that it was insufficient.

The burden fell to Gamble to inform City Light that she required a four ten schedule as an accommodation for her disability. Not only did Gamble fail to inform City Light that her new schedule was negatively impacting her disability, but she specifically requested the new schedule. Therefore, City Light did not violate the WLAD by failing to provide Gamble with a four ten schedule.

We affirm.

_Mann, ACJ_

WE CONCUR:

_Verellen, J_                              _Becker, J._