**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| LUCI SOLORIO, on her own behalf and on behalf of similarly situated others,<br><br>    Respondent,<br><br>    v.<br><br>REGENCE BLUESHIELD,<br><br>    Appellant. | No. 87362-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — Luci Solorio filed a discrimination action against Regence BlueShield (Regence) alleging, among other things, that the insurer's benefit exclusion for obesity treatment violates the Washington Law Against Discrimination (WLAD), ch. 49.60 RCW, and RCW 48.43.0128. The trial court denied Regence's CR 12(b)(6) motion to dismiss and we accepted interlocutory review. We affirm.

## I. FACTS

Solorio is enrolled in Regence's nongrandfathered health insurance plan.[1] In 2017, Solorio was diagnosed with obesity and received a sleeve gastrectomy, which was covered under Solorio's prior insurance plan. The surgery was successful, and Solorio no longer met the diagnostic criteria for obesity.

---

[1] Because this is an appeal of a denial of a motion for CR 12(b)(6) dismissal, we accept the factual allegations in the complaint as true. Tang Real Est. Invs., Corp. v. Escrow Servs. of Wash., 30 Wn. App. 2d 602, 603, 546 P.3d 453 (2024).

In 2021, while Solorio was enrolled with Regence, she required additional surgery to treat her gastroesophageal reflux disease (GERD) and a hiatal hernia. Regence denied all coverage under its obesity exclusion, asserting that the surgery was excluded because it related to her 2017 surgery for obesity. Regence's obesity exclusion provides:

> Except as provided in the Nutritional Counseling benefit, as required as part of the USPSTF, HRSA or CDC requirements, or as required by law, services or supplies that are intended to result in or relate to weight reduction (regardless of diagnosis or psychological conditions) are not covered, including but not limited to:
>   • medical treatment;
>   • medications;
>   • surgical treatment (including treatment of complications, revisions and reversals); or
>   • programs.

Solorio unsuccessfully appealed the denial of coverage to Regence. Solorio owes over $700,000 for the surgery.

Solorio sued Regence on her own behalf, and on behalf of similarly situated others, arguing that Regence's blanket obesity exclusion: (1) violates RCW 48.43.0128 and the WLAD, (2) breaches the insurance contract between Regence and Solorio as a violation of RCW 48.43.0128, (3) violates the Consumer Protection Act (CPA), ch. 19.86 RCW, and (4) individually breaches Regence's duty of good faith and fair dealing.

Regence moved for dismissal under CR 12(b)(6) arguing that (1) there is no private right of action to enforce RCW 48.43.0128, (2) the exclusion is nondiscriminatory, and (3) the office of the insurance commissioner (OIC) authorizes the exclusion as nondiscriminatory.

The trial court concluded that Solorio adequately alleged that Regence violated RCW 48.43.0128 when it designed and administered the obesity exclusion. The trial court also concluded that Solorio adequately alleged violations of RCW 48.43.0128 under the WLAD, the CPA, and as a breach of contract claim. Lastly, the trial court concluded that Solorio adequately alleged that Regence acted in bad faith when it denied coverage for obesity treatment. Accordingly, the court denied Regence's motion to dismiss.

We granted Regence's motion for interlocutory review.

## II.    ANALYSIS

### A.    Standard of Review

We review a trial court's CR 12(b)(6) order de novo. Wash. Trucking Ass'ns v. Emp't Sec. Dep't, 188 Wn.2d 198, 207, 393 P.3d 761 (2017). "A CR 12(b)(6) motion challenges the legal sufficiency of the allegations in a complaint." McAfee v. Select Portfolio Servicing, Inc., 193 Wn. App. 220, 226, 370 P.3d 25 (2016). Granting a motion to dismiss is "appropriate only when it appears beyond doubt that the plaintiff cannot prove any set of facts that would justify recovery." Wash. Trucking, 188 Wn.2d at 207. The facts alleged in the complaint are presumed true, but we need not accept the legal conclusions as true. Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 120, 744 P.2d 1032, 750 P.2d 254 (1987).

### B.    Legal Background and Statutory Framework

In 2010, Congress enacted the Affordable Care Act (ACA). Nat'l Fed'n of Indep. Bus. v. Sebelius, 567 U.S. 519, 538, 132 S. Ct. 2566, 183 L. Ed. 2d 450 (2012). It requires that most Americans maintain minimum essential health benefits (EHBs)

through health plans. Schmitt v. Kaiser Found. Health Plan of Wash., 965 F.3d 945, 949 (9th Cir. 2020). The ACA also "imposes an affirmative obligation not to discriminate in the provision of health care—in particular, to consider the needs of disabled people and not design plan benefits in ways that discriminate against them." Schmitt, 965 F.3d at 955. The ACA nondiscrimination provision provides:

> [A]n individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, or section 794 of title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance.

42 U.S.C. § 18116(a).

To comply with the ACA, each state was required to select a "benchmark" plan and applicable health plans were required to provide benefits that were "substantially equal" to the benchmark plan. 45 C.F.R. § 156.115(a)(1); Schmitt, 965 F.3d at 950. Washington's benchmark plan is "the largest small group plan in the state by enrollment" and is supplemented "as needed" to ensure coverage of all the 10 required EHBs. RCW 48.43.715(1), (2).

In 2019, the Washington Legislature adopted H.B. 1870 to make state law consistent with the protections in the ACA. FINAL B. REP. ON SUBSTITUTE H.B. 1870, at 1, 66th Leg., Reg. Sess. (Wash. 2019). As part of the session law, the legislature created RCW 48.43.0128 that provides that a health plan may not:

> In its benefit design or implementation of its benefit design, discriminate against individuals because of their age, expected length of life, present or predicted disability, degree of medical dependency, quality of life, or other health conditions.

RCW 48.43.0128(1)(a). Like its federal counterpart, the statute permits discriminatory treatment when it is based on "reasonable medical management techniques." RCW 48.43.0128(2); see also 45 C.F.R. § 156.25(c) ("Nothing in this section shall be construed to prevent an issuer from appropriately utilizing reasonable medical management techniques.").

Additionally, the WLAD establishes the right to be free from disability discrimination in insurance transactions. RCW 49.60.030(1)(e). The WLAD defines "disability" as "a sensory, mental, or physical impairment that: (i) is medically cognizable or diagnosable; or (ii) exists as a record or history; or (iii) is perceived to exist whether or not it exists in fact." RCW 49.60.040(7)(a).

Finally, relevant to this case, in Taylor v. Burlington Northern Railroad Holdings, Inc., 193 Wn.2d 611, 617, 444 P.3d 606 (2019), the Washington Supreme Court held:

> obesity is always an impairment under the plain language of RCW 49.60.040(7)(c)(i) because the medical evidence shows that it is a "physiological disorder, or condition" that affects many of the listed body systems. Obesity does not have to be caused by a separate physiological disorder or condition because obesity itself is a physiological disorder or condition under the statute.

### C.    Regence's arguments

#### 1.    WAC 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

Regence first argues that the trial court erred in denying its motion to dismiss because Regence's obesity exclusion does not violate RCW 48.43.0128 since WAC 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 implements the statute and authorizes insurers to exclude treatment for obesity. We disagree.

WAC 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 outlines the EHBs required by the state's benchmark plan. For example, the regulation outlines the services required by the benchmark plan, such as home and outpatient dialysis, urgent care, hospice, and home health care. WAC 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(1)(a). And the regulation outlines the services that a health plan may include, but is not required to:

> (b) A health benefit plan may, but is not required to, include the following services as part of the EHB-benchmark package. The base-benchmark plan specifically excludes these services. If an issuer includes these benefits in a health plan, the issuer should not include the following benefits in establishing actuarial value for the ambulatory category:
> . . . .
> (viii) <u>Obesity or weight reduction or control other than</u>:
> (A) Covered nutritional counseling; and
> (B) Obesity-related services for which the U.S. Preventive Services Task Force for prevention and chronic care has issued A and B recommendations on or before the applicable plan year, which issuers must cover under subsection (9) of this section.

WAC 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(1)(b). (Emphasis added.) The code lists multiple other benefits that a health plan is not required to include. <u>See</u> WAC 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(1)(b). If a plan includes these optional benefits, the code provides that "the issuer should not include" them "in establishing actuarial value for the ambulatory category." WAC 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(1)(b).

In <u>Simonton</u>, we provided a detailed analysis and interpretation of WAC 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 and how it relates to RCW 48.43.0128. <u>See</u> <u>Simonton v. Wash. State Health Care Auth.</u>, No. 86988-4-I, slip op. at 9-11 (Wash. Ct. App. May 4, 2026). We explained that the nondiscrimination requirement in RCW 48.43.0128 must be met independently of the compliance with the EHB requirements of WAC 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. <u>See</u> <u>Simonton</u>, No. 86988-4-I, slip op. at 10-11. WAC 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 is concerned with determining a plan's actuarial value and outlining the EHBs that a plan <u>must</u> include and benefits that a plan

may include. WAC 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 explains that the benefits that a plan may include, but is not required to, are not included in the plan's actuarial value.

Contrary to Regence's assertions, WAC 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 does not implement RCW 48.43.0128. We rejected similar arguments in Simonton. WAC 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 allowed exclusion of coverage for obesity and weight loss and prevented their counting towards actuarial value years before Washington enacted the nondiscrimination requirement. See Simonton, No. 86988-4-I, slip op. at 12-13 (outlining the legislative and regulatory history). As we explained:

> The text of section 5642 distinguishes between benefits that must be included and those that may be included or excluded but cannot count towards actuarial value, which serves the ACA's purposes in mandating baseline benefits and comparability between benefit levels. Yet nothing in the text signals that the distinction was also meant to be determinative of discrimination in benefit design. When the OIC promulgated the distinction in 2013, the nondiscrimination rule existed only as a federal requirement, whose scope is exclusively a federal question. Schmitt, 965 F.3d at 956-57 ("But even if a state required its benchmark plan to incorporate nondiscrimination principles, whether or not it complied with section 1557 is a question of federal law on which we owe the state no deference."). When Washington added its own nondiscrimination requirements in 2019 and 2020, they did not transform preexisting rules serving different purposes into now also serving to define what is or is not discrimination.

Simonton, No. 86988-4-I, slip op. at 13.

For those reasons, Solorio adequately alleged that Regence's obesity exclusion violates RCW 48.43.0128.

## 2.    WLAD

Regence next argues that the trial court erred in ruling that Solorio could enforce a violation of RCW 48.43.0128 through a claim under the WLAD. We disagree.

The WLAD requires liberal construction to accomplish the purposes of the law and states that nothing contained in the law shall "be construed to deny the right to any person to institute any action or pursue any civil or criminal remedy based upon an alleged violation of his or her civil rights." RCW 49.60.020. "A statutory mandate of liberal construction requires that we view with caution any construction that would narrow the coverage of the law." Marquis v. City of Spokane, 130 Wn.2d 97, 108, 922 P.2d 43 (1996).

Additionally, statutes should be read together when possible to achieve a harmonious total statutory scheme that maintains the integrity of the respective statutes. Am. Legion Post #149 v. Wash. State Dep't of Health, 164 Wn.2d 570, 588, 192 P.3d 306 (2008). We presume that the legislature did not intend to create inconsistent statutes, and when statutes relate to the same subject matter, they should be read together as a unified whole. Associated Gen. Contractors of Wash. v. State, 2 Wn.3d 846, 863, 544 P.3d 486 (2024).

The WLAD explicitly provides that individuals have the right to be free from discrimination in insurance transactions. RCW 48.43.0128 states that a health plan cannot discriminate against individuals because of a disability. These statutes, read together, prohibit an insurer from discriminating on the basis of disability. Therefore, Solorio adequately alleged that Regence violated RCW 48.43.0128 because its health plan categorically excluded treatment for obesity, which discriminates against people with obesity, a disability under the WLAD. The WLAD requires liberal construction and reading the WLAD as not to permit a cause of action for a violation of RCW 48.43.0128 would narrow the law, contrary to its express purpose. Therefore, Solorio may assert a

violation of the insurance code through the WLAD. Simonton, No. 86988-4-I, slip op. at 16 (concluding that plaintiffs could assert a violation of RCW 48.43.0128 through the WLAD).

Regence argues that even if Solorio could assert a claim, it would fail as a matter of law because the weight loss exclusion does not turn on exclusively the presence of a disability. We disagree.

The complaint alleges that the obesity exclusion can be a form of facial discrimination, proxy discrimination, and disparate impact discrimination. Solorio adequately alleges that the exclusion applies unequally to individuals with a disability because the denial of treatment for obesity for a medically necessary treatment is a different impact from the denial from individuals without a disability. See Simonton, No. 86988-4-I, slip op. at 17-19. Additionally, evidence for a discrimination claim "will generally contain reasonable but competing inferences of both discrimination and nondiscrimination that must be resolved by a jury." Johnson v. Chevron U.S.A., Inc., 159 Wn. App. 18, 27, 244 P.3d 438 (2010) (quoting Davis v. W. One Auto. Grp., 140 Wn. App. 449, 456, 166 P.3d 807 (2007)). Therefore, whether the exclusion applies equally should be a question of fact resolved by a fact-finder rather than disposed of under CR 12(b)(6).

For those reasons, the trial court did not err in declining to dismiss Solorio's claim.

### 3. CPA

Regence argues that Solorio failed to state a valid claim under the CPA. We disagree.

-9-

Generally, under the CPA, the plaintiff must prove "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986). A CPA claim "may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013).

Regence agrees that the trial court correctly concluded that insureds may assert a CPA claim for violations of the insurance code. Because Solorio adequately alleged a violation of RCW 48.43.0128, then Solorio adequately alleged a violation of the CPA. Therefore, the trial court did not err in declining to dismiss this claim.

## 4.      RCW 48.43.0128

Regence next argues that the trial court erred in holding that Solorio could assert a violation of RCW 48.43.0128 through a breach of contract claim. We disagree.

Regence asserts that the trial court impermissibly extended the Washington Supreme Court's holding in P.E.L. v. Premera Blue Cross, 2 Wn.3d 460, 540 P.3d 105 (2023). In P.E.L., an insured sought to enforce a provision of the insurance code—the state mental health parity act—through a breach of contract claim. The Washington Supreme Court "explicitly reaffirm[ed] that Washington insureds with non-ERISA health plans have the right to bring common law breach of contract actions to challenge alleged violations of our state parity statute." P.E.L., 2 Wn.3d at 488. The court explained that insurance contracts implicitly incorporate applicable state laws and that a

-10-

violation of applicable state law gives rise to a breach of contract claim. P.E.L., 2 Wn.3d at 477, 489.

Regence alleges that the court in P.E.L. did not address whether a breach of contract claim would be available for a violation of RCW 48.43.0128. We disagree. The Supreme Court explicitly reaffirmed the notion that plaintiffs can bring a cause of action for violation of state law in an insurance contract through a breach of contract claim. The court did not limit the holding to only the state's mental health parity act. Instead, the Supreme Court confirmed that applicable state law enters into an insurance contract and any provision that is not compliant with the law is unenforceable. Therefore, Solorio may enforce a violation of RCW 48.43.0128 through a breach of contract claim. See also Simonton, No. 86988-4-I, slip op. at 17 (concluding that plaintiffs adequately alleged breach of contract claim for obesity exclusion in a health plan based on RCW 48.43.0128).

### 5.      Duty of Good Faith and Fair Dealing

Regence lastly argues that the trial court erred in declining to dismiss the claim for breach of good faith and fair dealing because that claim is limited to performance, not terms of a contract. We disagree.

In Washington, in every contract there is an implied duty of good faith and fair dealing that requires parties to cooperate with each other so that they each may obtain the full benefit of performance. Rekhter v. Dep't of Soc. & Health Servs., 180 Wn.2d 102, 112, 323 P.3d 1036 (2014) (quoting Badgett v. Sec. State Bank, 116 Wn.2d 563, 569, 807 P.2d 356 (1991)).

In the complaint, Solorio alleged that Regence breached its duty of good faith and fair dealing when it administered its obesity exclusion without following its statutory obligations. Relying on Rekhter, the trial court concluded that Solorio adequately alleged a breach of the duty of good faith and fair dealing because Regence had a statutory obligation under RCW 48.43.0128 to not discriminate in the insurance contract and to not impose preexisting condition limitations under RCW 48.43.012(2).

Regence argues that the trial court's reliance on Rekhter is misplaced. There, the Department of Social and Health Services (DSHS) contracted with individual care providers to perform necessary services. Rekhter, 180 Wn.2d at 108. The contract stated that the providers agreed to assist with personal care services and household tasks included in the client's "service plan." The contracts incorporated by reference the service plans for the particular clients, but the contracts were signed before the service plans were created. After the contracts were signed, DSHS executed the service plans, which determined the work to be performed and the ultimate compensation. DSHS subsequently adopted a process that ultimately required live-in providers to "perform necessary services without compensation." Rekhter, 180 Wn.2d at 108-09.

The plaintiffs sued DSHS arguing that it violated the duty of good faith and fair dealing. Rekhter, 180 Wn.2d at 107. In response, DSHS argued: (1) there could not be a violation of the duty of good faith and fair dealing because DSHS did not breach a contract term; (2) there is no free-floating obligation of good faith and fair dealing; and (3) the plaintiffs cannot enforce duties arising from a statute and not terms of the contract. Rekhter, 180 Wn.2d at 111. The Washington Supreme Court rejected each argument. First, the court held it is possible to breach the implied duty of good faith and

-12-

fair dealing even while fulfilling all of the terms of the written contract. Rekhter, 180 Wn.2d at 112. Second, the court found that when a party has discretion over a future contract term, it has an implied duty of good faith in setting and performing that term. Rekhter, 180 Wn.2d at 115. Third, and finally, the court found a statutory violation can constitute a breach of the duty of good faith and fair dealing. Rekhter, 180 Wn.2d at 116-17. The court explained:

> While DSHS is correct that a breach of a duty imposed by statute does not create an action on a contract, Boguch v. Landover Corp., 153 Wn. App. 595, 615, 224 P.3d 795 (2009), the duty that providers seek to enforce here is a contractual duty around a contractual term. The contractual term is the determination of the hours of care for which each client is eligible, and DSHS had discretion in its performance of that term because it created the [Comprehensive Assessment and Reporting Evaluation (CARE)] process that made that determination. Therefore, DSHS had an implied duty of good faith and fair dealing in its performance of that term. Here, the jury found that DSHS violated that contractual duty when it decided to automatically reduce the payments for in-home care providers. Furthermore, excusing breaches of the duty of good faith when those breaches are also statutory violations would neither protect the reasonable expectations of contracting parties nor encourage parties to obey the law.

Rekhter, 180 Wn.2d at 117-19.

Here, like Rekhter, a factfinder could conclude that Regence violated a contractual duty when it denied covering Solorio's claims because it was contrary to its statutory duty to not discriminate. Regence's obesity exclusion applies as required by state law. But when Regence denied coverage for Solorio's surgery related to the obesity diagnosis, it may have violated its duty of good faith and fair dealing because it is contrary to the statute not to discriminate. For those reasons, Solorio adequately alleged a violation of the implied duty of good faith and fair dealing.

We affirm.

_____ Mann, J.

WE CONCUR:

_____ Birk, J.

_____ Coburn, J.