[No. 53419-0-I. Division One. April 18, 2005.]

BRUCE HINES, *Appellant*, v. TODD PACIFIC SHIPYARDS CORPORATION, *Respondent*.

358

*Richard J. Hughes*, for appellant.

*W. Eugene Barton* (of *Karr Tuttle Campbell*), for respondent.

¶1 SCHINDLER, J. — In April 1999, Bruce Hines was injured while working at Todd Pacific Shipyards Corporation (Todd). Hines tested positive for cocaine and was suspended from work. Todd allowed Hines to return to work on condition that he agree to successfully complete a substance abuse treatment program. Todd terminated Hines in December 1999 for failing to comply with the requirements of the agreement. In 2000, a subcontractor for Todd hired Hines to work on a government project at Todd's facility. When Todd informed the subcontractor that Hines could not work at Todd's facility because he had failed a drug test and was terminated, the subcontractor laid off Hines.

¶2 Hines contends the trial court erred in granting Todd summary judgment and deciding (1) Hines did not have a claim under the health care disclosure act (HCDA), chapter 70.02 RCW, or for breach of confidentiality; (2) Todd was not negligent; and (3) Hines failed to establish Todd violated Washington's Law Against Discrimination (WLAD), chapter 49.60 RCW. Hines also contends the trial court abused its discretion in denying the motion to amend his complaint to allege a retaliation claim under WLAD. We affirm.

FACTS

¶3 Hines worked as a rigger for Todd intermittently for approximately 20 years. Hines' work as a rigger was dangerous and involved moving heavy equipment on and off shipping vessels.

¶4 In April 1999, Hines injured his ankle in an on-the-job accident. The terms of the Collective Bargaining Agreement (CBA) between Todd and the International Brotherhood of Boilermakers Local No. 104 Union (Union) required Hines to submit to a drug and alcohol screening test. Hines tested positive for cocaine and he was suspended from work

at Todd.[1] The CBA required Todd to provide Hines the opportunity to obtain treatment. Todd's personnel manager, Tim Sullivan, referred Hines to drug treatment programs including Lakeside-Milan Recovery Centers (Lakeside). Sullivan told Hines he could return to work after obtaining a drug evaluation and successfully completing any recommended treatment.

¶5 Hines obtained a drug and alcohol assessment at Lakeside and was diagnosed with cocaine and alcohol dependency. Lakeside recommended Hines participate in an intensive month-long inpatient program followed by a 26-week aftercare program. The 26-week aftercare program required Hines to abstain from alcohol and drugs and attend at least seven meetings a week. Hines agreed to participate in the treatment program at Lakeside. On April 26, 1999, Hines signed a release authorizing Lakeside to release information to Todd, "including historical, diagnostic, treatment or other related information . . . , [and] [a]ny and all information about or learned in the course of treatment."[2] The authorization automatically expired after 90 days.[3]

¶6 Hines successfully completed the 28-day in-patient treatment program on May 31, 1999. Todd allowed Hines to return to work after completing in-patient treatment on condition that he agreed to enter into an Agreement for Continuation of Employment, also known as the "Last Chance Agreement" (LCA).[4] The LCA required Hines to

---

[1] The CBA requires a Medical Reviewing Officer to review and verify positive test results. Hines' results were confirmed by Dr. Clyde Wilson at Virginia Mason Hospital. Under the CBA, any employee who tests positive and who the employer is going to discharge will first receive a suspension pending an investigation by management and the appropriate Union representatives.

[2] Clerk's Papers (CP) at 861.

[3] This authorization expired on July 25, 1999.

[4] The pertinent part of the LCA required:

2. The employee must agree to participate in all rehabilitation treatment recommended by the SAP [Substance Abuse Professional].

3. The employee must authorize the SAP to provide a copy of the SAP's recommendations to the Company.

comply with the requirements of the drug and alcohol treatment program and successfully complete the program. The LCA expressly provides that Hines' employment with Todd was contingent on the terms of the Agreement and that failure to comply with the treatment program would result in termination. On June 11, 1999, Hines signed the LCA. To comply with the LCA, Hines understood he had to authorize Lakeside to release information. After Hines signed the LCA, the Union dispatched Hines to work at Todd when work was available from June 1999 until December 1999.

¶7 In August 1999, Lakeside notified Todd that Hines had missed meetings and was not in compliance with the treatment program. Sullivan sent a letter to Hines reiterating that he needed to comply with the treatment program in order to work at Todd. Sullivan asked Hines to call him so that they could "get to the bottom of this matter before we must take action regarding your future employment."[5]

¶8 Hines called Sullivan and told him the insurance carrier had not paid Lakeside. Sullivan suggested Hines contact the Union to assist him with payment and reminded Hines that under the LCA his failure to comply with the treatment program could result in termination from Todd.[6] On September 9, 1999, Hines resumed participation in the treatment program with Lakeside.

- - - -

5. The SAP must agree to closely monitor the Employee's attendance at all required sessions. Failure of the Employee to adhere to the program for treatment recommended by the SAP will subject the Employee to disciplinary action by the Company, up to and including termination.

6. The Employee, the Company and the Union mutually agree that the Employee's continuation of employment for the next twelve (12) months or during the term of any recommended treatment should it extend beyond twelve (12) months, is contingent upon his/her satisfactorily meeting all the terms outlined in this agreement, and that failure to do so may subject the Employee to immediate termination of employment with the Company.

[5] CP at 875.

[6] Sullivan told Hines to contact him if Todd could help. "If the Company can help, please so advise." CP at 882.

¶9 In December 1999, Lakeside again notified Todd that Hines had unexcused absences and was not in compliance with his treatment program. On December 15, 1999, Hines revoked his authorization to Lakeside to provide information to Todd. On December 15, 1999, Todd terminated Hines for not complying with the LCA. On December 21, 1999, Sullivan informed the Union that Hines was terminated for violating the LCA and instructed the Union not to dispatch Hines to work at Todd.[7]

¶10 In early 2000, the Union dispatched Hines to work for Fraser Boiler. At that time, Fraser Boiler was a subcontractor for Todd doing work on a United States Navy Vessel at Todd's facility. Employees doing work on the Navy Vessel needed security clearance.[8] On March 11, 2000, Sullivan learned Hines and another former Todd employee were working for Fraser Boiler on the Navy Vessel at the Todd facility. Sullivan sent an e-mail to Todd employees Ludy Marz, Marlene Twilley, and Clarence Dias requesting removal of Hines and the other former employee. The e-mail stated,

> I'm addressing this to you not knowing the proper direction to go in hope that you may be the right contact. It has been reported that Frasier [sic] or some other sub currently has two former Todd employees working for them that either failed a recent drug test at Todd or has been fired for a similar offense. We want them removed from our job site. Can you help. . . . The two former employees are . . . Bruce Hines . . . .[9]

Fraser Boiler received a copy of Sullivan's e-mail. Fraser Boiler laid off Hines because he did not have security clearance to work at Todd's facility.

¶11 On October 26, 2001, Hines filed a lawsuit against Todd. Hines alleged that Todd's decision to terminate him

---

[7] Hines filed a grievance with the Union against Todd. After determining that Hines violated the LCA, the Union did not pursue Hines' grievance.

[8] Habitual use of alcohol or drugs could prevent an employee's security clearance.

[9] CP at 425.

and Todd's failure to accommodate his drug and alcohol disability violated the WLAD. Hines also alleged tortious interference. In July 2002, Hines filed a motion to amend his complaint to add Lakeside as a defendant and to add claims based on the March 11 e-mail and the information disclosed by Todd to Fraser Boiler. Hines' additional claims were for retaliation under RCW 49.60.210, invasion of privacy, disclosure of health care information in violation of the HCDA, common law breach of confidentiality, negligent or intentional misrepresentation, negligence, breach of fiduciary duty, violation of public policy under 42 U.S.C. § 12112, and spoliation of evidence.[10] The trial court granted Hines' motion to amend the complaint to name Lakeside as a defendant and add some, but not all, of his claims. The court denied Hines' request to add claims for retaliation under RCW 49.60.210, breach of fiduciary duty, violation of public policy under 42 U.S.C. § 12112, and spoliation of evidence.

¶12 In February 2003, Hines filed a motion for partial summary judgment on the HCDA and common law breach of confidentiality claims. Todd filed a cross motion for partial summary judgment. The trial court granted Todd's motion and dismissed Hines' HCDA and common law breach of confidentiality claims.

¶13 In September 2003, Todd filed a motion for summary judgment on Hines' remaining claims. The court granted Todd's motion and dismissed Hines' lawsuit.[11]

¶14 Hines appeals the trial court's decision to grant Todd's cross motion for summary judgment on his HCDA and common law breach of confidentiality claims and the trial court's decision to grant Todd's motion for summary judgment dismissing Hines' claims for negligence and dis-

---

[10] Hines also moved to add a claim for discriminatory discharge under RCW 49.60.180. This was unnecessary, however, because Hines had already pleaded this claim in his initial complaint.

[11] The court dismissed Hines' claims for (1) discriminatory discharge under RCW 49.60.180, (2) failure to accommodate under RCW 49.60.180, (3) negligence, (4) tortious interference, and (5) invasion of privacy.

criminatory discharge and failure to accommodate under WLAD. Hines also contends the trial court abused its discretion in denying his motion to amend the complaint to add a claim for retaliation under RCW 49.60.210. We affirm.

## ANALYSIS

¶15 In reviewing an order granting summary judgment, this court engages in the same inquiry as the trial court. *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48, 914 P.2d 728 (1996). Summary judgment is appropriate if depositions, answers to interrogatories, and admissions together with the affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). A material fact is one upon which the outcome of the litigation depends in whole or in part. *Morris v. McNicol*, 83 Wn.2d 491, 494, 519 P.2d 7 (1974). Facts and reasonable inferences are viewed in a light most favorable to the nonmoving party. *Michak v. Transnation Title Ins. Co.*, 148 Wn.2d 788, 794, 64 P.3d 22 (2003). But the nonmoving party must set forth specific facts to defeat a motion for summary judgment. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225-26, 770 P.2d 182 (1989). In discrimination cases, the plaintiff must establish specific and material facts to support each element of his or her prima facie case. *Marquis v. City of Spokane*, 130 Wn.2d 97, 105, 922 P.2d 43 (1966).

*Health Care Disclosure Act, Chapter 70.02 RCW*

¶16 Hines claims Todd's e-mail disclosing that Hines failed a recent drug test violated the health care disclosure act, chapter 70.02 RCW. Hines asserts Todd is a "health care provider" who disclosed "health care information" without "patient authority." We conclude the HCDA does not apply to Todd. Todd is not a "health care provider," the results of a drug screening test that Todd requires employees to obtain after an on-the-job injury is

not "health care information," and the drug screening test was not administered to Hines as a "patient." Todd's drug screening test was a condition of Hines' employment agreed to in the CBA.

¶17 Statutory interpretation is a question of law, requiring de novo review. *Berger v. Sonneland*, 144 Wn.2d 91, 104-05, 26 P.3d 257 (2001). Courts should not engage in statutory interpretation if a statute's language is unambiguous. *Id.* at 105. The meaning of a plain and unambiguous statute must be derived from the language of the statute itself. *Id.* However, if a statute is ambiguous, it must be interpreted to effectuate legislative intent. *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996). "A statute is ambiguous if it can reasonably be interpreted in two or more ways, but it is not ambiguous simply because different interpretations are conceivable." *Berger*, 144 Wn.2d at 105.

¶18 The HCDA regulates disclosures and access to health care information and allows a private cause of action against a health care provider who does not comply with the act. Under the HCDA a health care provider may not disclose health care information without the patient's authorization.

> [A] health care provider, an individual who assists a health care provider in the delivery of health care, or an agent and employee of a health care provider may not disclose health care information about a patient to any other person without the patient's written authorization.[12]

The legislature defines "health care provider" as "a person who is licensed, certified, registered, or otherwise authorized by the law of this state to provide health care in the ordinary course of business or practice of a profession."[13] "Health care" is "any care, service, or procedure provided by a health care provider: (a) [t]o diagnose, treat, or maintain a patient's physical or mental condition; or (b) [t]hat affects

---

[12] RCW 70.02.020.

[13] RCW 70.02.010(7).

the structure or any function of the human body."[14] "Health care information" is "any information, whether oral or recorded in any form or medium, that identifies or can readily be associated with the identity of a patient and directly relates to the patient's health care."[15] A "patient" is "an individual who receives or has received health care" treatment.[16]

¶19 There is no evidence to support Hines' argument that Todd is a health care provider and the HCDA applies to Todd. It is undisputed that the purpose of the drug screening test was not health care or medical treatment. Todd required Hines to obtain the drug screening test as a condition of employment after he was injured at work. The drug test was administered before Hines was referred to or began treatment at Lakeside. After Hines started treatment with Lakeside, Lakeside's only connection with Todd was to provide progress reports of Hines' compliance with the treatment program.[17]

¶20 In the alternative, Hines argues that even if Todd is not a health care provider under the HCDA, the HCDA applies because the Civil Remedies section of the Act states that a "court may order the health care provider or *other person* to comply" with the HCDA. RCW 70.02.170(2) (emphasis added).

¶21 Health care providers who fail to comply with the HCDA are subject to liability. RCW 70.02.170 provides:

(1) A person who has complied with this chapter may maintain an action for the relief provided in this section against a health care provider or facility who has not complied with this chapter.

---

[14] RCW 70.02.010(4)

[15] RCW 70.02.010(6)

[16] RCW 70.02.010(10).

[17] Hines claims an agency relationship between Todd and Lakeside but cites no legal authority or facts in the record to support this assertion. *Blodgett v. Olympic Sav. & Loan Ass'n*, 32 Wn. App. 116, 128, 646 P.2d 139 (1982). This court will not address arguments that are unsupported by authority. *See* RAP 10.3(a)(5); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

(2) The court may order the health care provider or *other person* to comply with this chapter. Such relief may include actual damages, but shall not include consequential or incidental damages. . . . [18]

Hines contends the provision in RCW 70.02.170(2) "or other person" means the HCDA applies to Todd. But under RCW 70.02.170(1), an action against a health care provider or facility is a condition precedent to the provision in RCW 70.02.170(2) that allows a court to order the health care provider "or other person" to comply with the HCDA.

¶22 We conclude the HCDA does not apply to Todd. Todd is not a health care provider. The result of the drug screening test is not health care information and Todd's disclosure of those results did not violate the HCDA.[19]

*Negligence*

¶23 Hines also claims Todd's disclosure of information about his drug test to Fraser Boiler was negligent. To prove negligence, Hines must show (1) duty, (2) breach of that duty, (3) proximate cause, and (4) damages. *Mathis v. Ammons*, 84 Wn. App. 411, 415-16, 928 P.2d 431 (1996). Whether a duty of care is owed is a question of law. *Hansen v. Friend*, 118 Wn.2d 476, 479, 824 P.2d 483 (1992). Hines contends that Todd's duty to not disclose the drug screening test results is based on the HCDA.[20] Because we conclude that the HCDA does not apply to Todd, Hines' negligence claim fails.

---

[18] (Emphasis added.)

[19] This conclusion is in accord with our decision in *Jeckle v. Crotty*, 120 Wn. App. 374, 386, 85 P.3d 931, *review denied* 152 Wn.2d 1029 (2004). In *Jeckle*, we held that attorneys were not health care providers and were not liable under the HCDA.

[20] Hines' citation to WAC 162-22-090 is inapposite. WAC 162-22-090 relates to employment of persons with a disability and a health care professional's opinion about whether the disability affects performance on the job. WAC 162-22-090(4) also expressly provides that an employer may disclose health care information "on a need to know basis."

*Common Law Breach of Confidentiality*

¶24 Hines relies on *Liebergesell v. Evans*, 93 Wn.2d 881, 889-91, 613 P.2d 1170 (1980); *McCutcheon v. Brownfield*, 2 Wn. App. 348, 356-57, 467 P.2d 868 (1970); and *Beltran v. Department of Social & Health Services*, 98 Wn. App. 245, 989 P.2d 604 (1999), to argue that Todd's disclosure that Hines failed a recent drug test also breached Todd's duty of confidentiality to Hines. These cases do not support Hines' claim for common law breach of confidentiality. *Liebergesell* and *McCutcheon* addressed whether a fiduciary relationship existed between the parties. The issue in *Beltran* was whether public employee records were discoverable under the public disclosure act, chapter 42.17 RCW.

*Disability Discrimination Claims*

¶25 Hines contends the trial court erred in granting summary judgment and dismissing his claims for disability discrimination under WLAD. Hines claims his termination and the subsequent e-mail disclosure violated RCW 49.60.180. Hines also claims Todd failed to reasonably accommodate his drug and alcohol disability by not inquiring into the nature of his dispute with Lakeside or allowing Hines the opportunity to complete treatment elsewhere.

██ ¶26 It is an unfair practice for an employer to refuse to hire, to terminate, or to otherwise discriminate based on a person's sensory, mental, or physical disability. RCW 49.60.010, .180(1)-(3). Under WLAD a disabled employee has a cause of action for (1) disparate treatment and (2) failure to accommodate. *Jane Doe v. Boeing Co.*, 121 Wn.2d 8, 17, 846 P.2d 531 (1993).

(1) *Disparate Treatment*

¶27 An employer cannot refuse to hire a person or otherwise discriminate because of a disability if the person is qualified to do the job. RCW 49.60.180. Washington courts have adopted the *McDonnell-Douglas/Burdine* three-part burden allocation framework for disparate treatment cases. *McDonnell-Douglas, Corp. v. Green*, 411 U.S.

792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).

¶28  Under *McDonnell-Douglas/Burdine*, the plaintiff has the initial burden to prove a prima facie case. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to present evidence of a legitimate nondiscriminatory reason for its actions. The burden then shifts back to the plaintiff to produce evidence that the asserted reason was merely a pretext. *Anica v. Wal-Mart Stores, Inc.*, 120 Wn. App. 481, 488, 84 P.3d 1231 (2004). The plaintiff carries the ultimate burden at trial to prove discrimination was a substantial factor in employer's actions. But to survive summary judgment Hines need show only a reasonable judge or jury could find his disability was a substantial motivating factor for the employer's adverse actions. *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 185-87, 23 P.3d 440 (2001) (*Hill II*).

¶29  Assuming Hines could establish each element of the prima facie case,[21] Todd has produced evidence establishing Hines was terminated because he violated the terms of the LCA. The terms of the LCA are clear. As a condition of working at Todd, Hines agreed to comply with the requirements of the drug and alcohol treatment program and successfully complete the program. Hines was not in compliance with Lakeside's program. The fact that Todd terminated Hines for failing to comply with the terms and conditions of the LCA is a legitimate reason to terminate his employment. There is no evidence Hines was terminated because of his drug and alcohol disability. Todd did not fire Hines after he tested positive for drugs. Todd assisted Hines in entering a treatment program. Todd allowed Hines to return to work after he was diagnosed with chemical dependency. The first time Lakeside notified

---

[21] To establish a prima facie case of discrimination Hines must show: (i) Hines was disabled, (ii) Hines was able to perform his job, (iii) Hines was fired and not rehired, and (iv) a nondisabled person was hired. *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 94 P.3d 930 (2004).

Todd that Hines was not in compliance with the treatment program, Todd sent a letter of warning to Hines instead of terminating him. And Hines admits he was terminated for violating the LCA. Our conclusion is consistent with *Rhodes v. URM Stores, Inc.*, 95 Wn. App. 794, 800, 977 P.2d 651 (1999). In *Rhodes*, this court also concluded an employee was not discharged because he was chemically dependent but rather because of his failure to comply with the terms of a similar reentry agreement. *See also McKey v. Occidental Chem. Corp.*, 956 F. Supp. 1313 (S.D. Tex. 1997).

¶30 Hines argues there is a strong inference that the LCA was merely a pretext. But Hines presents no evidence that Todd's stated reason to terminate him was pretextual. To prove Todd's articulated reason for discharging Hines is a pretext Hines must produce evidence that the reason is unworthy of belief. *Kuyper v. Dep't of Wildlife*, 79 Wn. App. 732, 738, 904 P.2d 793 (1995). "Speculation and belief are insufficient to create a fact issue as to pretext. Nor can pretext be established by mere conclusory statements of a plaintiff who feels that he has been discriminated against." *McKey*, 956 F. Supp. at 1319. If the employee does not establish pretext, the employer is entitled to dismissal. *Hill* II, 144 Wn.2d at 182.

¶31 Hines contends Lakeside falsely informed Todd that Hines revoked his authorization to release information. Hines also argues that Lakeside's decision to terminate Hines from the treatment program was wrongful and Lakeside acted as Todd's agent. Hines' contentions are based on speculation. Hines presents no evidence that Todd knew the information provided by Lakeside was allegedly false or that Lakeside's decision to terminate Hines from the treatment program was in any way connected to Todd. On this record, there is no evidence Hines was discharged for any reason other than violation of the LCA. Consequently, Todd is entitled to judgment as a matter of law as to the claim for discriminatory discharge under RCW 49.60.180(2). *Hill* II, 144 Wn.2d at 184-85.

(2) *Accommodation*

¶32 Hines asserts Todd failed to reasonably accommodate his drug and alcohol disability because Todd did not inquire into Hines' dispute with Lakeside and Todd did not allow Hines the opportunity to complete drug and alcohol treatment elsewhere.

¶33 State law requires employers to reasonably accommodate a disabled employee unless the accommodation would be an undue hardship. *Pulcino v. Fed. Express Corp.*, 141 Wn.2d 629, 639, 9 P.3d 787 (2000); former WAC 162-22-080 (1998). The employee must establish four elements to prove discrimination based on lack of accommodation: (1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality. *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 532, 70 P.3d 126 (2003); *Hill II*, 144 Wn.2d at 192-93.

¶34 Here, there is no evidence that any accommodation was medically necessary for Hines' drug and alcohol disability. There is also no evidence that Hines ever asked Todd to give him the opportunity to complete drug and alcohol treatment at a different facility. We conclude summary judgment was appropriate. *See Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 94 P.3d 930 (2004).

*Motion to Amend Complaint*

¶35 Hines contends the trial court erred in denying his motion to amend the complaint to add a claim for retaliation under WLAD. Civil Rule 15(a) permits a party to amend a pleading by leave of court, and leave shall be freely given when justice so requires. The amendment of pleadings is left to the sound discretion of the trial court,

whose determination will be overturned on review only for an abuse of that discretion. *Herron v. Tribune Publ'g Co.*, 108 Wn.2d 162, 165, 736 P.2d 249 (1987). Discretion is abused if it is manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). We find no abuse of discretion.

¶36 Under RCW 49.60.210(1), "[i]t is an unfair practice for any employer, employment agency, labor union, or other person to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter." A prima facie case for retaliation requires a plaintiff to show: (1) he engaged in protected activity, (2) the employer took adverse employment action, and (3) there is a causal link between the protected activity and the adverse action. *Milligan v. Thompson*, 110 Wn. App. 628, 638, 42 P.3d 418 (2002).

¶37 In the amended complaint, Hines alleged Todd retaliated against him by sending the March 11, 2000 e-mail and informing Fraser Boiler that he failed a recent drug test and was terminated. Hines' amended complaint did not allege any protected activity. Even a liberal examination of the allegations in Hines' amended complaint cannot support Hines' claim of retaliation. *See Dewey v. Tacoma Sch. Dist. No. 10*, 95 Wn. App. 18, 974 P.2d 847 (1999) (the court found the plaintiff's complaint failed to plead a First Amendment violation because it did not allege all elements necessary to establish a prima facie free speech claim). *Dewey*, 95 Wn. App. at 24-25.[22]

---

[22] For the first time on appeal Hines asserts Todd's retaliation was in response to the following protected activity: (1) his request for reasonable accommodation, (2) his threat of legal action after Todd warned him he would be fired for not complying with the LCA, and (3) his opposition to being terminated. Our review is limited to arguments raised below. *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983). Nevertheless, there is no evidence in the record and Hines cites no evidence that he requested an accommodation, threatened legal action, or voiced opposition to his termination. Bare assertions are not evidence. *Hill II*, 144 Wn.2d at 193 n.20.

CONCLUSION

¶38  We affirm the trial court's decision to dismiss Hines' HCDA, common law breach of confidentiality, negligence, and disability discrimination claims on summary judgment and the trial court's decision to deny Hines' motion to amend his complaint to add a claim for retaliation. Todd is entitled to reasonable attorney fees under RCW 70.02-.170(2) upon compliance with RAP 18.1.

BECKER and APPELWICK, JJ., concur.