IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ZHI H. FENG,<br><br>　　　　　　　Appellant,<br><br>　　v.<br><br>JEN TURNER, LIZ SHIER,<br>GHIVIZZANNI R JEAN NOKES, and<br>BETTER PROPERTIES - METRO,<br><br>　　　　　　　Respondents. | No. 84694-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Zhi Feng appeals from the dismissal of his claims against Better Properties-Metro (Metro), Jen Turner, Liz Shier, (collectively "Metro Defendants") and Rosalain Jean Nokes-Ghivizzani[1] for allegedly prohibiting him from subletting the property he rented. Feng also challenges the trial court's orders vacating a default order entered against Turner, as well as its orders granting the respondents' requests for attorney's fees. We agree that the trial court abused its discretion by awarding attorney's fees without the requisite factual findings and remand for the trial court to reconsider its award. We otherwise affirm the decision of the trial court.

---

[1] The case caption mistakenly lists Ghivizzani as Nokes-Ghivizzani's first name. We utilize the same case caption that was used in the trial court.

Citations and pincites are based on the Westlaw online version of the cited material.

FACTS

Feng signed a 24-month lease for a house located on 63rd Avenue South in Seattle, Washington, beginning on October 1, 2012 and ending on September 30, 2014. The property was owned by Nokes-Ghivizzani and managed by Metro. Turner is the owner of and a property manager for Metro. Shier is a representative of Metro. Feng continued to reside at the property after September 30, 2014 and his lease converted to a month-to-month tenancy.

On June 11, 2022, Feng filed a complaint against the respondents for breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, declaratory relief, unjust enrichment, intentional infliction of emotional distress, negligent infliction of emotional distress, and illegal discrimination. Attached to Feng's complaint were a number of documents that purportedly supported his claims. He served four copies of the summons and complaint on Turner but did not serve the other defendants. Law firm Lee Smart, P.S., Inc. entered a notice of appearance on behalf of Metro, but not any of the other defendants.

On July 18, 2022, without notifying Metro or its counsel, Feng filed a motion for default against all of the individually named defendants. On July 19, the court granted the motion as to Turner and entered an order of default, but denied it as to Shier and Nokes-Ghivizzani, as there was no proof that those defendants had ever been served. Despite obtaining an order of default, Feng continued to serve discovery requests on Turner. On August 31, 2022, Turner moved to vacate the default order against her due to mistake and lack of proper service, as well as Feng's failure to notify Metro of the motion. The trial court granted the motion.

Nokes-Ghivizzani and the Metro Defendants each filed motions to dismiss pursuant to CR 12(b)(6). Feng responded by filing a motion to amend his complaint. In his proposed amended complaint, Feng removed the claims for breach of fiduciary duty, declaratory relief, and illegal discrimination but added claims for civil conspiracy and violation of the Consumer Protection Act (CPA). Feng also filed a single response to both motions to dismiss, attaching a number of documents that had not previously been submitted to the court.

The trial court granted both Nokes-Ghivizzani's and the Metro Defendants' motions to dismiss. The trial court denied Feng's motion to amend his complaint to the extent that it sought to add new claims, but granted it to dismiss with prejudice the claims for breach of fiduciary duty, declaratory relief, and illegal discrimination. The trial court awarded attorney's fees to the Metro Defendants pursuant to RCW 4.84.185 and CR 11. It separately awarded attorney's fees to Nokes-Ghivizzani pursuant to RCW 4.84.185.

Feng appeals.[2]

## DISCUSSION

### Vacation of the Default Order

*A. Standard of Review*

Feng asserts that the trial court erred by vacating the default order entered against Jen Turner. We review a trial court's decision on a motion to vacate for abuse of discretion. In re Marriage of Scanlon, 110 Wn. App. 682, 686, 42 P.3d 447 (2002).

---

[2] Feng filed a motion with this court to stay the deadline to submit his reply brief. Feng has since submitted a reply brief within the original deadline. His motion is therefore denied as moot.

"A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

CR 55(c)(1) permits a trial court to set aside a default order "[f]or good cause shown and upon such terms as the court deems just." "To establish good cause under CR 55, a party may demonstrate excusable neglect and due diligence." In re Estate of Stevens, 94 Wn. App. 20, 30, 971 P.2d 58 (1999). In deciding whether to vacate a default order, the trial court is guided by three principles: (1) default orders are disfavored and it is preferable to resolve cases on their merits, (2) the court's primary concern is "whether justice is being done," and (3) "'[w]hat is just and equitable must be determined based on the specific facts of each case.'" Sellers v. Longview Orthopedic Assocs., PLLC, 11 Wn. App. 2d 515, 520, 455 P.3d 166 (2019) (alteration in original) (quoting VanderStoep v. Guthrie, 200 Wn. App. 507, 518, 402 P.3d 883 (2017)). "[W]e are less likely to find an abuse of discretion when a trial court sets aside a default order than when a trial court denies a motion to set aside a default order." Id. at 521.

B.   *The Trial Court Did Not Abuse its Discretion by Vacating the Default Order Entered Against Jen Turner.*

Feng asserts that the trial court abused its discretion by vacating the default order against Jen Turner. Feng contends that the declarations submitted in support of Turner's motion to vacate demonstrate that the omission of Turner from Lee Smart's initial notice of appearance was intentional, rather than inadvertent, and thus Turner did not demonstrate good cause to vacate the default order. When Feng made this argument to the trial court, the court did not accept it, implicitly finding the declarations submitted by Turner's counsel were credible. Because this court does not review a trial

court's credibility determinations or weigh conflicting evidence, In re Marriage of Black, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017), we will not revisit that determination.

Feng also asserts that the trial court erred by finding that his motion for default was procedurally improper as he had not served Metro with notice of the motion. By the time that Feng sought a default order against Turner, Metro had already entered a notice of appearance in the case. Feng contends that CR 55(a)(3) does not require service of parties who have already appeared if the court considers the motion ex parte. This is not a reasonable reading of the rule. CR 55(a)(3) states that "Any party who has appeared in the action for any purpose shall be served with a written notice of motion for default and the supporting affidavit at least 5 days before the hearing on the motion." A party cannot skirt the requirements of the civil rules simply by submitting their pleadings to the ex parte department.

Furthermore, King County Local Civil Rule 55 is clear that Feng was required to provide notice to Metro before obtaining a default order. KCLCR 55(a)(1) states:

> When there has not been an appearance by any non-moving party, the moving party shall seek entry of an Order of Default from the Ex Parte and Probate Department through the clerk's office. When there has been an appearance by any non-moving party or more than one year has elapsed since service of the summons with no appearance made, the motion for default shall be noted without oral argument before the assigned Judge, or if none, in the courtroom of the Respective Chief Judge (see LGR 29(h)). The Motion in support of the Order for Default shall affirmatively state; (A) whether or not there has been an appearance by any non-moving party, and (B) how service of the summons complied with CR 4(d) and applicable state statute(s), and provide supporting documentation of proof of service.

(emphasis added). Feng plainly violated this rule by submitting his motion to the ex parte department when he knew that Metro had already appeared in the case.

When a party entitled to notice under CR 55 does not receive notice, the trial

court does not have the authority to enter a default order and the aggrieved party is entitled to vacation of the order as a matter of right.[3] <u>Servatron, Inc. v. Intelligent Wireless Prods., Inc.</u>, 186 Wn. App. 666, 679, 346 P.3d 831 (2015). Because the trial court must vacate a default order entered without notice, it would have been error for the trial court not to grant the motion to vacate.

Feng additionally asserts that the trial court abused its discretion by failing to address any of the issues raised in Turner's motion to vacate and Feng's response thereto. This argument is meritless, as the trial court plainly considered the parties' arguments and ruled on the motion accordingly. CR 55 does not require the trial court to make specific findings in its written order vacating a default order. We will not impose a requirement upon the trial court where the Supreme Court has chosen not to do so.

The trial court did not abuse its discretion by vacating the default order against Turner.

Dismissal of Feng's Claims

*A. Standard of Review*

The parties dispute which standard of review applies to the dismissal of Feng's claims. Feng asserts that the trial court dismissed his claims under CR 12(b)(6), since all of the documents the court considered were attached to either his original or his first amended complaint. The respondents, on the other hand, assert that the trial court dismissed his claims under CR 56, because the trial court considered documents

---

[3] "[P]arties can assert the rights of another when those rights are intertwined with their own rights." <u>Lamar Outdoor Advert. v. Harwood</u>, 162 Wn. App. 385, 393, 254 P.3d 208 (2011). Turner was sued in her capacity as owner and agent of Metro. As such, Metro would potentially have been responsible for any judgment against Turner. <u>Mauch v. Kissling</u>, 56 Wn. App. 312, 316, 783 P.2d 601 (1989). Because their rights were so closely intertwined, Turner could assert Metro's right to notice of the motion for default.

outside the pleadings.

Under either standard, our review is de novo.  P.E. Sys., LLC v. CPI Corp., 176 Wn.2d 198, 203, 289 P.3d 638 (2012).  However, a motion to dismiss under CR 12(b)(6) asks whether the plaintiff can prove any set of facts that would justify relief, whereas a motion for summary judgment under CR 56 asks whether there is any genuine issue of material fact and if the moving party is entitled to judgment as a matter of law.  Id.; Strauss v. Premera Blue Cross, 194 Wn.2d 296, 300, 449 P.3d 640 (2019).  On a CR 12(b)(6) motion, the trial court must presume all factual allegations in the plaintiff's complaint are true.  Jackson v. Quality Loan Serv. Corp., 186 Wn. App. 838, 843, 347 P.3d 487 (2015).  On a CR 56 motion, the trial court does not make any presumptions but instead construes all evidence in favor of the nonmoving party.  Young v. Key Pharm., Inc., 112 Wn.2d 216, 226, 770 P.2d 182 (1989).

"Either party may submit documents not included in the original complaint for the court to consider in evaluating a CR 12(b)(6) motion.  Such submissions generally convert a CR 12(b)(6) motion into a motion for summary judgment."  McAfee v. Select Portfolio Servicing, Inc., 193 Wn. App. 220, 226, 370 P.3d 25 (2016) (internal citations omitted).  By choosing to submit exhibits and declarations to support his response to the motions to dismiss, Feng himself converted the defendants' motions into motions for summary judgment.  The trial court's order demonstrates that it considered this evidence along with the pleadings before issuing its orders.  The trial court's order dismissing the claims against Nokes-Ghivizzani states that the court considered the "Declaration of Dr. Rosalain Jean Nokes-Ghivizzani" and "Plaintiff's Response and accompanying declarations."  Similarly, the trial court's order dismissing the claims

against the Metro Defendants states that the court considered "Mr. Feng's opposition and accompanying declarations." The trial court clearly considered documents outside the pleadings when deciding both motions to dismiss.[4] Thus, we will review the trial court's orders as orders on summary judgment.

As the party responding to summary judgment, Feng had the burden to demonstrate the existence of a genuine issue of material fact using admissible evidence.[5] Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wn.2d 342, 351, 144 P.3d 276 (2006). When that burden is not met, summary judgment is appropriate. Id.

*B. Feng Failed to Present an Issue of Material Fact on Any Claim Against the Metro Defendants.*

Feng asserts that the trial court erred by granting the Metro Defendants' motion to dismiss. Feng contends that the trial court was required to advise him about the deficiencies in his complaint before dismissing his claims with prejudice and that he presented sufficient evidence to support his claims. We disagree.

As discussed in subsection A, supra, the respondents' motions were decided under the summary judgment standard rather than the CR 12(b)(6) standard. Thus, the court decided the motions to dismiss on the evidence presented rather than on any deficiencies in the complaint. Furthermore, contrary to Feng's assertion, there is no requirement in Washington that a court explain to a litigant, whether represented by

---

[4] Although Feng contends that he intended to attach the documents to his first amended complaint, the trial court had not yet ruled on his motion to amend at the time he submitted them as exhibits to his response to the motions to dismiss.

[5] Feng briefly argues that the trial court erred by dismissing his claims prior to the completion of discovery. This argument is made for the first time on appeal and we therefore decline to consider it. See RAP 2.5(a).

8

counsel or not, how his complaint fails to state a claim.[6]

Feng asserted eight claims in his original complaint: breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, declaratory relief, unjust enrichment, intentional infliction of emotional distress, negligent infliction of emotional distress, and illegal discrimination.  Feng voluntarily dismissed his claims for breach of fiduciary duty, declaratory relief, and illegal discrimination.  Although Feng asserts that those claims should not have been dismissed with prejudice, he does not assign error to that determination and he fails to present any argument concerning those three claims. "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration."  Holland v. City of Tacoma, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) (citing State v. Johnson, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992)). Accordingly, we analyze whether Feng presented a material issue of fact on his claims for breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, intentional infliction of emotional distress, and negligent infliction of emotional distress.

*(i)  Breach of Contract*

To establish a claim for breach of contract, the plaintiff must establish the existence of a contract, the duty imposed by the contract, breach of that duty, and that the breach proximately caused damages to the plaintiff.  Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus., 78 Wn. App. 707, 712, 899 P.2d 6 (1995) (citing Larson v. Union Inv. & Loan Co., 168 Wash. 5, 10 P.2d 557 (1932)); Alpine Indus., Inc. v. Gohl,

---

[6] In Washington courts, pro se litigants are held to the same standard as attorneys. Winter v. Dep't of Soc. & Health Servs. on behalf of Winter, 12 Wn. App. 2d 815, 844, 460 P.3d 667 (2020) (citing In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993)).

30 Wn. App. 750, 637 P.2d 998 (1981)). Feng asserts that Turner and Metro[7] breached the rental agreement by prohibiting him from subleasing his rental home. We disagree.

Initially, Turner, Shier, and Nokes-Ghivizzani are not parties to the lease agreement and Feng offers no explanation for how any of these defendants would be liable for Metro's breach of contract. Since Feng did not allege or provide any evidence of a contract with any of the individual defendants, the breach of contract claim against them was properly dismissed.

As evidence of his claim against Metro, Feng points to an email from Turner that states, "As per the City of Seattle current rules during COVID, I cannot stop you from subletting the home to other tenants right now." Feng contends that this statement "implies that she would prohibit Feng from subletting if the alleged 'rule' did not exist." Even if we construe Turner's statement to imply that Metro would not allow him to sublease his rental home if the City of Seattle rule did not exist, an implied statement that a party might breach the contract does not constitute a breach of contract. See Grant County Port Dist. No. 9 v. Wash. Tire Corp., 187 Wn. App. 222, 232, 349 P.3d 889 (2015) ("A party's 'doubtful and indefinite statements' suggesting only that it may not perform do not demonstrate repudiation.") (quoting Wallace Real Est. Inv. Inc. v. Groves, 124 Wn.2d 881, 898, 881 P.2d 1010 (1994)).

Feng also points to an email that states "We will not allow any sub-leasing per se with us." Feng omits the remainder of this sentence: "with an actual lease extension or term." Read in context, the email only states that it will not be extending Feng's lease in order to accommodate any sublessors. The email is not evidence of breach.

---

[7] Feng makes no argument as to Shier or Nokes-Ghivizzani.

Furthermore, no evidence suggests that Metro had a duty to extend the term of his lease. Even under the most generous reading of Feng's exhibits, none of the evidence submitted establishes that he was ever actually prohibited from subletting his rental home. Because Feng did not present any evidence that Metro breached a contractual duty owed to him, his claim for breach of contract was properly dismissed.

*(ii) Breach of the Duty of Good Faith and Fair Dealing*

The duty of good faith and fair dealing is a duty that is implied into every contract. Est. of Carter v. Carden, 11 Wn. App. 2d 573, 583, 455 P.3d 197 (2019). However, "the duty is not free-floating, but 'arises only in connection with terms agreed to by the parties.'" Id. at 584 (quoting Badgett v. Sec. State Bank, 116 Wn.2d 563, 569, 807 P.2d 356 (1991)). Additionally, the duty of good faith and fair dealing does not encompass a duty to affirmatively assist the other party in their performance. State v. Trask, 91 Wn. App. 253, 273, 957 P.2d 781 (1998).

Feng's claims for breach of the duty of good faith and fair dealing fails for the same reasons his breach of contract claims fail. Feng asserts that the trial court erred by dismissing his claim for breach of the duty of good faith and fair dealing because he presented evidence that he was prohibited from subleasing his rental home for two and a half months. The evidence he points to is that same email that states "We will not allow any sub-leasing per se with us with an actual lease extension or term." Feng presented no evidence that Metro had any duty, good faith or otherwise, to extend the term of his lease. Metro had no duty to negotiate directly with Feng's proposed sublessors and its refusal to do so is not evidence of breach.

Moreover, Feng presents no evidence that he had any contract with Turner,

11

Shier, or Nokes-Ghivizzani. As such, none of these defendants had any duty of good faith and fair dealing toward Feng. Feng's claim for breach of the duty of good faith and fair dealing was properly dismissed.

*(iii) Unjust Enrichment*

A claim for unjust enrichment requires the plaintiff to demonstrate that he or she conferred a benefit on the defendants, that the defendants knew or appreciated the benefit, and that circumstances exists that would make it inequitable for the defendants to retain the benefit without paying its value. Young v. Young, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008) (citing Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc., 61 Wn. App. 151, 159-60, 810 P.2d 12 (1991)). A claim for unjust enrichment cannot coexist with a claim for breach of contract on the same set of facts. Chandler v. Wash. Toll Bridge Auth., 17 Wn.2d 591, 604, 137 P.2d 97 (1943) ("A party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract.").

Feng asserts that the Metro Defendants were unjustly enriched by prohibiting him from subleasing his rental home but retaining the $700 deposit for subletting. These are the same facts upon which Feng relies for his breach of contract claim. Because Feng's unjust enrichment claim is based on the terms of his lease (the contract), he has no valid claim for unjust enrichment. Furthermore, the evidence presented does not show that Feng was ever prohibited from subleasing his rental home. Thus, the trial court did not err by dismissing his claim for unjust enrichment.

*(iv) Intentional Infliction of Emotional Distress*

A claim for intentional infliction of emotional distress requires the plaintiff to demonstrate "'(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress.'" Trujillo v. Nw. Tr. Servs., Inc., 183 Wn.2d 820, 840, 355 P.3d 1100 (2015) (internal quotation marks omitted) (quoting Lyons v. U.S. Bank Nat'l Ass'n, 181 Wn.2d 775, 792, 336 P.3d 1142 (2014)). Although outrageousness is ordinarily a question for the jury, the trial court may dismiss a claim on summary judgment if reasonable minds could not differ that the conduct was or was not sufficiently extreme. Id. Conduct is sufficiently extreme if it is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (internal quotation marks omitted) (quoting Lyons, 181 Wn.2d at 792).

Feng alleges that the outrageous conduct committed by the Metro Defendants was "conducting multiple unjustified inspections." This is not conduct that is so extreme as to go beyond all bounds of decency. Landlords possess a statutory right to enter the rented premises in order to make necessary repairs, alterations, or improvements or to show the premises to prospective buyers. RCW 59.18.150(1). Landlords must give notice before doing so and cannot use entry onto the premises to harass the tenant. RCW 59.18.150(6).

The evidence presented by Feng shows that he was given notice before the Metro Defendants entered his rental home. Feng's evidence also demonstrates that the purpose of Metro's entry into the rental home was for the statutorily permitted purpose

of conducting measurements for planned alterations and improvements in preparation for sale of the property. No reasonable juror would conclude that exercising a statutory right constituted extreme and outrageous conduct.

Feng also contends that Turner told Feng's wife that he was having an extra-marital affair. This allegation was not included in Feng's original complaint. Feng's proposed amended complaint also did not include this allegation. Rather, what Feng alleged in his complaint was that Turner told his wife that Feng "had another woman before her" and that he "has a domestic issue." The only evidence Feng provided to support these allegations was a declaration from his wife, in which she states that Turner "told me Feng had lived with other women in the property before." In neither Feng's complaint nor his evidence is there any mention of an extra-marital affair. It is a fact of modern life that many people have multiple dating relationships prior to getting married and that many people have roommates before residing with their eventual spouse. No reasonable juror could possibly conclude that telling someone that their spouse had a prior relationship or used to live with other people constitutes extreme and outrageous conduct.

The trial court did not err by dismissing Feng's claim for intentional infliction of emotional distress.

*(v) Negligent Infliction of Emotional Distress*

To establish a claim for negligent infliction of emotional distress, the plaintiff must prove the standard elements of a negligence claim – duty, breach, causation, and damages – as well as the additional element of objective symptomatology. Strong v. Terrell, 147 Wn. App. 376, 387, 195 P.3d 977 (2008). Objective symptomatology

14

means that "a plaintiff's emotional distress must be susceptible to medical diagnosis and proved through medical evidence." Hegel v. McMahon, 136 Wn.2d 122, 135, 960 P.2d 424 (1998). The only allegation in Feng's complaint pertaining to symptoms of a medical condition was that Turner was aware that he had a pre-existing anxiety disorder. Feng neither alleged nor provided any medical evidence that he suffered any objective symptoms of emotional distress as the result of defendants' actions.[8]

Feng's proposed amended complaint alleged that his wife and mother-in-law suffered objective medical symptoms. Even if Feng's motion to amend his complaint had been granted, this assertion would not support his claim for negligent infliction of emotional distress because Feng's wife and mother-in-law are not parties to this action. Feng nevertheless asserts that he should be able to recover for his wife and mother-in-law's injuries pursuant to Hegel. However, Hegel contemplates a claim for negligent infliction of emotional distress only for those who witness an accident, or the aftermath thereof, involving a family member – not for those who merely hear of a relative's injury. 136 Wn.2d at 131. Feng did not allege nor did he provide evidence that he witnessed an accident or the aftermath thereof involving his wife or mother-in-law.

The trial court was correct when it noted on the record that there are "no facts alleged that would come close to constituting negligent infliction of emotional distress." The trial court did not err by dismissing Feng's claims.

---

[8] The declaration of Zhi Wei Feng states only that Feng "complained he was in emotional distress after knowing his mother-in-law was still in hospital." Dr. Feng's declaration is not "medical evidence" as it does not meet the standards required for expert medical testimony. Anderson v. Akzo Nobel Coatings, Inc., 172 Wn.2d 593, 606-07, 260 P.3d 857 (2011) ("Expert medical testimony must meet the standard of reasonable medical certainty or reasonable medical probability."); see also ER 702; Lakey v. Puget Sound Energy, Inc., 176 Wn.2d 909, 918, 296 P.3d 860 (2013) (requirements for expert testimony generally). The declaration also omits any mention of the defendants and thus does not provide any evidence of causation.

*C. Feng Failed to Present an Issue of Material Fact on Any Claim Against Nokes-Ghivizzani.*

Feng makes no separate argument concerning the dismissal of his claims against Nokes-Ghivizzani except as it pertains to his claim for intentional infliction of emotional distress. Feng asserts that his claim was supported by his declaration that Nokes-Ghivizzani knocked on his door yelling and demanding he move out. That declaration was submitted in response to Nokes-Ghivizzani's motion for attorney's fees, after his claims had already been dismissed. By submitting evidence in response to Nokes-Ghivizzani's motion to dismiss, Feng imposed on himself the burden to produce evidence to demonstrate the existence of a genuine issue of material fact. See Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wn.2d 16, 26, 109 P.3d 805 (2005) (describing nonmoving party's motion on summary judgment). The plaintiff may not submit additional evidence after an order has been entered, unless the evidence is newly discovered. Meridian Mins. Co. v. King County, 61 Wn. App. 195, 203, 810 P.2d 31 (1991). The incident Feng described in his declaration occurred in July 2022, over three months before the trial court entered its order dismissing his claims against Nokes-Ghivizzani. Since Feng did not submit this evidence before the court decided the motion to dismiss, it cannot provide the basis for reversal of the order.

Review of the documents submitted to the trial court prior to entry of its order convinces us that dismissal of Feng's claims against Nokes-Ghivizzani was proper. Feng's complaint makes no factual allegations at all concerning Nokes-Ghivizzani other than that she owned the home that Feng rented.[9] Evidence submitted by Feng shows

---

[9] The same is true for defendant Shier, who is named as an agent of Metro but is otherwise not mentioned at all in Feng's complaint.

that Nokes-Ghivizzani is not a party to the rental agreement. While Feng submitted multiple declarations to the court, none of them even mention Nokes-Ghivizzani. With no factual allegations and no evidence to support them, all claims against Nokes-Ghivizzani were properly dismissed. The trial court did not err.

*D. Feng's Amended Complaint Would Have Been Futile.*

Finally, Feng asserts that the trial court erred by denying his motion to amend his complaint. CR 15 permits a plaintiff to amend his complaint by leave of court, which shall be freely given as justice so requires. "The amendment of pleadings is left to the sound discretion of the trial court, whose determination will be overturned on review only for an abuse of that discretion." Hines v. Todd Pac. Shipyards Corp., 127 Wn. App. 356, 373-74, 112 P.3d 522 (2005). Leave to amend may be denied where the new claims are futile or untimely. Ino Ino, Inc. v. City of Bellevue, 132 Wn.2d 103, 142, 937 P.2d 154 (1997). Feng's proposed amended complaint sought to add two claims: civil conspiracy and violation of the CPA.[10] Feng asserts that his proposed amendment was not futile because his allegations, taken as true, support these newly raised claims. We disagree.

*(i) Civil Conspiracy*

To state a claim for civil conspiracy, the plaintiff must allege that "(1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy." All Star Gas, Inc., of Wash. v. Bechard, 100 Wn. App. 732, 740, 998 P.2d 367 (2000) (citing Wilson v. State, 84 Wn. App. 332, 350-51, 929

---

[10] Chapter 19.86 RCW.

P.2d 448 (1996)). "Mere suspicion or commonality of interests is insufficient." Id.

In his proposed amended complaint, Feng alleged that Turner and Nokes-Ghivizzani "made their decision together after 'much discussion.'" In support of this allegation, Feng attached an email from 2012 in which Turner stated, "After much discussion, with the owners of 63rd, they have agreed to allow a change of lease if the following criteria is met: . . . Deposit will be raised an additional $700 . . . If this is satisfactory to you I will begin drawing up paperwork . . . " All that this email demonstrates is that the parties were engaged in negotiation prior to Feng signing the lease. Feng alleges no other facts to support his claim. Negotiating the terms of a rental contract is perfectly legal. Even if it were not, or if the defendants utilized unlawful means during the negotiation (which Feng does not allege), the statute of limitations on this claim expired many years ago. See RCW 4.16.080(2). Because Feng does not allege facts that would support a timely claim for civil conspiracy, his proposed amendment would have been futile.

(ii) *Breach of the Consumer Protection Act*

To state a claim for breach of the CPA, the plaintiff must allege (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) an impact on the public interest; (4) injury to plaintiff in his or her business or property; (5) causation. Hangman Ridge Training Stables Inc. v, Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986). In his proposed amended complaint, Feng alleged that the defendants engaged in an unfair act or practice by taking a deposit permitting him to sublet and subsequently refusing to honor the terms of his lease.

As our Supreme Court has held, breach of a residential lease cannot support a

claim for violation of the CPA. State v. Schwab, 103 Wn.2d 542, 553, 693 P.2d 108 (1985). The Court determined that "nothing in the legislative history of the enactment of the Consumer Protection Act suggests that it was ever intended by the Legislature to be applied to the rental of residential housing," and that the legislative history of the Residential Landlord Tenant Act led to the same conclusion. Schwab, 103 Wn.2d at 549. As such, "residential landlord-tenant problems [are] not [] included within the Consumer Protection Act, RCW 19.86, either directly . . . or indirectly." Id. at 553. Because the only facts Feng alleged in his proposed amended complaint are that the defendants refused to honor the terms of his residential lease, his claim for violation of the CPA is not legally cognizable. The trial court did not err by finding that Feng's proposed amendments would be futile and by denying his motion to amend his complaint.

*E. Additional Evidence Not Presented to the Trial Court.*

Finally, Feng asserts that additional evidence, not provided to the trial court, would have supported his claims. Feng has already filed a motion to submit additional evidence, which a Commissioner of our court denied because Feng failed to comply with the requirements of RAP 9.11. Having reviewed Feng's motion to modify the Commissioner's ruling, as well as the response and reply thereto, we conclude that the Commissioner's ruling was correct. Feng's motion is denied and we will not consider any argument premised on evidence not provided to the trial court.

Attorney's Fees

Feng asserts that the trial court erred by awarding attorney's fees to the respondents. Feng contends that his complaint was not frivolous and that the trial court

19

did not adhere to the statutory requirements for awarding fees on the basis of frivolity. We agree that the trial court's awards of fees were not supported by findings of fact as required by RCW 4.84.185 and CR 11 and remand for the trial court to reconsider the awards.

We review the trial court's award of fees under CR 11 and RCW 4.84.185 for an abuse of discretion. State ex rel. Quick-Ruben v. Verharen, 136 Wn.2d 888, 903, 969 P.2d 64 (1998). "[B]efore awarding attorney fees under RCW 4.84.185, the court must make written findings that the lawsuit in its entirety is frivolous and advanced without reasonable cause." N. Coast Elec. Co. v. Selig, 136 Wn. App. 636, 650, 151 P.3d 211 (2007). Neither the order dismissing Feng's claims and awarding fees to the Metro Defendants nor the order granting Nokes-Ghivizzani's motion for fees include any findings of fact.

Similarly, before a trial court can award fees under CR 11, "the court must make explicit findings as to which pleadings violated CR 11 and as to how such pleadings constituted a violation of CR 11." Id. at 649. Specifically, "[t]he court must make a finding that either the claim is *not* grounded in fact or law and the attorney or party failed to make a reasonable inquiry into the law or facts, *or* the paper was filed for an improper purpose." Biggs v. Vail, 124 Wn.2d 193, 201, 876 P.2d 448 (1994). As previously noted, the order dismissing Feng's claims and awarding CR 11 sanctions to the Metro Defendants contains no findings of fact.

When a trial court has failed to enter required findings of fact to support its award of fees or sanctions, the proper remedy is remand for the trial court to make explicit findings as to the basis for its award of fees or imposition of sanctions. Id. at 202.

20

Accordingly, we remand this matter for the trial court to reconsider its orders awarding fees and sanctions in light of our opinion.

Feng requests an award of fees for his appeal. Feng failed to devote a separate section of his brief to his request for fees, as required under RAP 18.1. His request for fees is therefore denied.

The respondents request an award of fees pursuant to RAP 18.9 for having to respond to a frivolous appeal. This court having reversed the trial court's orders imposing fees and sanctions against Feng, it follows that the appeal cannot be deemed frivolous. The respondents' request for fees is hereby denied.

## CONCLUSION

The trial court's award of fees to the respondents pursuant to CR 11 and RCW 4.84.185 is reversed. We remand this matter to the trial court for reconsideration of its award of fees in light of this opinion. We otherwise affirm the judgment of the trial court.

_____
Cohen, J.

WE CONCUR:

_____        _____
Brennan, J                                                   Mann, J.